**Kenneth W. McKINNY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–00538–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 14, 2002.

Rehearing Overruled May 31, 2002.

Ray A. Castro, Houston, for appellant.

Melinda Diane Doell, Assistant District Attorney, John B. Holmes, District Attorney, Houston, for the State.

Originally submitted to panel consisting of Justices COHEN, JENNINGS, and DUGGAN.*

## EN BANC OPINION

TERRY JENNINGS, Justice.

Appellant, Kenneth W. McKinny, was tried simultaneously for two state jail felony offenses: (1) theft of a truck and (2) theft of a pump worth more than $1,500 and less than $20,000. Although the jury acquitted appellant of the truck theft, it found him guilty of the theft of the pump and assessed punishment at two years confinement in a state jail with a $3,000 fine. In five points of error, appellant contends the evidence was legally and factually insufficient to support the jury's finding of guilt as to the theft of the pump, he was denied the right to effective assistance of counsel, he was denied the right to conflict-free counsel, and the trial court erred by failing to conduct a hearing to deter-

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

mine whether a conflict of interest existed between appellant and his trial counsel. We affirm.

## Background

On December 17, 1998, appellant and Charles Havard removed two water pumps from an unlocked tool shed on a construction site, placed them in a truck, and drove away. Almost immediately after taking the pumps, Houston Police Officer K.W. Bray stopped the truck for a traffic violation and arrested Havard and appellant for theft of the truck and theft of the pumps.

Immediately prior to trial, the State entered into a plea agreement with Havard, who agreed to testify against appellant in exchange for concurrent one-year sentences for both offenses. Havard stated, under oath, that he would testify that he picked up appellant and asked him if he wanted to make some money. Havard stated that he and appellant took two water pumps and put them in the back of the truck *with the intent of pawning them and [Havard] using [appellant's] ID because [Havard] did not have one.* (Emphasis added.)

At trial, Officer Bray testified that Havard was driving the truck, and he stopped it because Havard made an illegal left turn. At that time, appellant was riding in the passenger seat. Havard failed to provide any identification or valid proof of insurance for the truck. Officer Bray noticed the truck's steering column cover was broken and the ignition key was in a position that would normally turn the engine off. While Bray was determining whether information Havard provided him was correct, appellant twice began to "meander away" from the truck. Both times, Officer Bray instructed appellant to return and

wait next to the front of the truck. Bray confirmed the truck was stolen, and, within minutes, learned the pumps were just stolen. He placed both men under arrest. After his arrest, Havard gave a handwritten statement to the police.

Clayton Atkinson testified that he was a supervisor for Basic Contracting at the construction site, located in Harris County, Texas. On the afternoon of December 17, 1998, he noticed two water pumps were missing from an unlocked tool shed on the site, and he immediately notified the police. He testified that the industrial pump in question was one year old and had a value of approximately $1700.[1]

The State presented the testimony of Charles Havard, who stated he stopped appellant, who was hitchhiking, and asked appellant if he wanted to make some money. At the time, Havard was wearing a shirt bearing the logo of "Tree Services, Inc.," a tree trimming company. The same logo appeared on the side of the truck he was driving. Havard claimed that he had never met appellant before that day, and he stopped appellant because Havard knew he would need someone to help lift the water pumps. When appellant told Havard he needed a ride, Havard told him to get in the truck. Havard then took appellant to the construction site, where appellant helped Havard put the pumps into the truck. Remarkably, in subsequent direct examination by the State, Havard stated he did not remember his pretrial testimony regarding their intent to pawn the water pumps using appellant's identification.

When asked by appellant's counsel on cross-examination if he ever told appellant that the pumps were not his, Havard re-

---

1. Although two water pumps were stolen, appellant and Havard were charged only for the theft of one.

sponded, "I didn't make a statement either way. I didn't say yes, I didn't say no." Havard later testified further, "I never said we were stealing. I never said we was, I never said we wasn't." Havard admitted that, prior to testifying, he pleaded guilty to theft of the truck and the water pump, and he conceded he provided his testimony at trial in exchange for plea bargain agreements regarding those charges.

Through the testimony of Houston Police Officer Scott Cire, the State offered Havard's handwritten statement into evidence without objection from appellant's counsel. The statement contains a version of events different from Havard's trial testimony, and reads, in relevant part:

> I was at 59 [and] Laura Coupe [sic]. Sleeping under the bridge. I woke up, and was walking to the store to bum something to eat. 2 black males pulled up and ask [sic] me if I wanted to go make some money. I said yes. I got in the truck and we went to the store. I was bought [sic] 2 sandwiches and a bag of chips [and] a Coke. We left and we went to a house. The man driving got out then 5 min[utes] later he returned [.] We went back to the store[.] The driver left in a white car. Then I was ask [sic] to drive because the other one did not know how to drive a standard. I did[.] I was told were [sic] to go and then we pulled up in front of a railroad box on the ground and we loaded up [two] water pumps. We left and I was pulled over.

Havard admitted to giving this statement to police, but insisted he did so only because a police officer promised to charge him with misdemeanor theft and charge appellant with the theft of the truck. Havard said he gave this first, admittedly false, statement to the officer to do less time in jail, "so I gave him what he wanted to hear."

After the initial day's testimony, but prior to closing the following day, the State presented the testimony of Harris County Sheriff's Deputy D.B. Cleeman, assigned as a bailiff to the 337th District Court. Deputy Cleeman stated that, while he was escorting Havard back to the jail after his trial testimony, he asked Havard if he was there to testify for the State, because it appeared he was there for the defense. Cleeman stated that Havard told him "he was here to help his friend." Cleeman further testified that Havard told him that he and appellant "had been doing this throughout for quite a while, that they did this together" and "since he had already taken his plea bargain earlier yesterday morning that he was going to do whatever it took to help his buddy get off." On cross-examination, Deputy Cleeman conceded he generally does not believe everything inmates tell him, and Havard was not a person Cleeman would believe.

## Sufficiency of the Evidence

In points of error one and two, appellant contends the evidence presented was legally and factually insufficient to support the jury finding of guilt for the theft of the pump.

■ A legal sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Jones v. State*, 944 S.W.2d 642, 647–48 (Tex.Crim.App.1996).

■ We note that, as the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their

testimony, the jury may believe or disbelieve all or any part of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981) ("A jury is entitled to accept one version of the facts and reject another or reject any of a witness's testimony.").

■ Viewing the evidence in the light most favorable to the prosecution, the jury was presented with the following incriminating evidence: (1) Havard's prior statements (although repudiated by him at trial), (2) the unusual manner in which Havard picked up appellant and offered him the opportunity to "make some money," (3) Havard wore a shirt and drove a truck bearing the logo of a tree trimming service, yet he took appellant to a construction site to pick up industrial water pumps, (4) the steering column of the truck was clearly broken off (as seen in a photograph taken by the police and admitted into evidence), indicating the strong possibility it was stolen, (5) Havard's testimony that appellant helped him load the pumps into the truck, and (6) the testimony of the bailiff regarding Havard's "bragging" about trying to help appellant with his testimony and having carried out the theft together. We hold the evidence was legally sufficient to support the jury's finding of guilt.

■ In reviewing the factual sufficiency of the evidence, we examine all the evidence neutrally, and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *King v. State,* 29 S.W.3d 556, 563 (Tex. Crim.App.2000). We will reverse the fact finder's determination only if a manifest injustice has occurred. *Id.* In conducting our analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must also avoid substituting our judgment for that of the fact finder. *Id.* A review of the sufficiency of the evidence requires us to consider all evidence admitted, including any evidence which may have been erroneously admitted. *Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Crim.App.1987).

■ Appellant presented no testimony or evidence. In support of his factual sufficiency argument, appellant relies on the inconsistencies in Havard's trial testimony and prior oral and written statements. He contends the evidence was so weak as to undermine confidence in the jury's determination. What weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). Thus, the jury was free to believe or disbelieve all or any part of Havard's testimony. A court of appeals must show deference to such a jury finding. *Id.* at 409. Viewing all the evidence neutrally, the jury could have believed Havard when he testified appellant helped him load the pumps into the truck. The jury could then have reasonably inferred from the circumstantial evidence that appellant in fact knew they were stealing the pumps. A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Id.* at 410. We will not substitute our judgment for that of the jury. *Id.* We hold the evidence was factually sufficient to support the jury's finding of guilt of the theft of the pump.

We overrule appellant's first and second points of error.

## Ineffective Assistance of Counsel

In his third point of error, appellant contends he was denied his constitutional

right to effective assistance of counsel.[2] As grounds for his ineffective assistance of counsel claim, appellant argues his trial counsel (1) failed to object to the State calling Havard to testify for the sole purpose of impeaching him with his prior statements to the police, (2) failed to object to the State eliciting testimony about Havard's prior statements to police and to the introduction of Havard's unsworn written statement, (3) failed to show the jury that Havard's trial testimony was the same testimony he agreed to give in exchange for a plea bargain, (4) failed to request limiting instructions concerning Havard's testimony, (5) characterized Havard as a liar, (6) failed to challenge the value of the stolen pump, and (7) failed to object to improper closing argument.

To show ineffective assistance of counsel, an appellant must demonstrate counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms, and that, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999); *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). It is an appellant's burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813; *Jackson*, 973 S.W.2d at 956; *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992). An appellant must satisfy both prongs of the *Strickland* test, or the claim of ineffective assistance will fail. 466 U.S. at 697, 104

S.Ct. at 2069; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001).

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Thompson*, 9 S.W.3d at 813. We must look to the "totality of the representation and the particular circumstances of each case" in evaluating the effectiveness of counsel. *Id.* In so doing, we must also recognize the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *Thompson*, 9 S.W.3d at 813. As the Supreme Court observed,

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To defeat this presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland*, 928 S.W.2d at 500. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. *Thompson*, 9 S.W.3d at 813.

However, a single egregious error of omission or commission by counsel has been held to constitute ineffective assistance, even in the absence of a record setting forth counsel's reasons for the chal-

**2.** U.S. Const. amend. VI.

lenged conduct. *Vasquez v. State*, 830 S.W.2d 948, 950 (Tex.Crim.App.1992) (per curiam); *Valencia v. State*, 966 S.W.2d 188, 191 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Laurant v. State*, 926 S.W.2d 782, 783 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). In the rare case where the record on direct appeal is sufficient to prove counsel's performance was deficient, an appellate court should address the claim. *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined, and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440.

**Havard's Testimony and Statements**

Appellant argues his counsel was ineffective for characterizing Havard as a liar and failing to object to his trial testimony, prior oral statements, and his written statement. He further contends his trial counsel failed to show the jury that Havard's testimony was in exchange for a plea bargain.

As noted above, the State entered into a plea agreement with Havard, who agreed to testify in exchange for concurrent one-year sentences for both offenses. At a pretrial hearing, Havard stated, under oath, his testimony would be as follows:

Q: (By prosecutor) And in exchange for your testimony against [appellant], you have been given the offer of one year stay in jail and both cases to run concurrently; is that correct?

A: Yes, sir.

Q: In [sic] the testimony that you intend to offer at today's trial, is that you had picked up [appellant] and the two of you—*you had asked him if you were—if he wanted to make some money and he said yes. The two of you then proceeded to take two water pumps from a location in Harris County,* put them in the back of the truck *with the intent of pawning them and you using [sic] McKinney's ID because you did not have one;* is that correct?

A: *Yes.*

Q: Is that what your testimony will be today?

A: Yes.

Q: When you testify?

A: Yes ...

Q: Is there anything else you wish to add about your involvement with [appellant] with regards to the pumps?

A: I drove towards the metal container that the pumps were in and I seen the pumps in the container. I couldn't lift them by myself so I went looking for the first person I seen and he just happened to be walking down the street there. I pulled over and asked him if he wanted to make some money. He said yes. He needed a ride and I told him I'd give him a ride and he got in. I pulled up towards the pumps were just a few hundred yards down the road. I pulled up, we put the pump in the truck and then when I was pulling out, it wasn't but right down the street, I got pulled over.

At trial, the State called Havard, who testified that he and appellant had loaded the pumps into the truck. Without objection from appellant's counsel, the State questioned Havard about the written

statement he gave to the police when he was arrested. The State asked Havard for the "high points" of that statement, and he testified as follows:

> On that particular one, I think I showed that I got two black guys to—they picked me up at some store and got me to go help them steal some stuff. Now let's see. I got them to pick me up at the store and we went to the place to get the water pump and then they showed me where it was and they wanted me to drive. I think that's what I said.

Havard's testimony regarding his prior statements was hearsay,[3] but defense counsel made no objection (except "leading") to this testimony. Later, appellant's counsel made no objection when the State offered Havard's written statement into evidence.

On cross-examination by appellant's trial counsel, Havard admitted that, prior to testifying, he pleaded guilty to theft of the truck and the water pump, and conceded he was providing his testimony at trial in exchange for plea bargain agreements regarding those charges. The cross-examination reads, in pertinent part, as follows:

> Q: (By defense counsel) And this morning you made a statement before this Bench, didn't you?
>
> A: Yes, that's the one.
>
> Q: And at the time you made the statement you were looking at a punishment range of 2 to 20 years, weren't you?
>
> A: Yes, sir.
>
> Q: You don't want to go to the penitentiary for 20 years, do you?

> A: No, sir.
>
> . . . .
>
> Q: And you went into the room this morning in the back and discussed 2–20 years; the State offered you less than even 2 years, didn't they?
>
> A: Yes, sir.
>
> Q: If you would do what?
>
> A: Come out here and testify and tell the truth.
>
> Q: So how much time did you get for that?
>
> A: One year. State jail.

Thus, appellant's contention that his trial counsel failed to show Havard's testimony was in exchange for a plea bargain is without merit.[4]

Appellant's counsel also elicited the fact that Havard's prior oral and written statements to the police were made only because a police officer had promised to charge Havard with only misdemeanor theft, and had promised to charge appellant with the theft of the truck. Havard effectively disavowed these prior statements, which did not specifically name appellant and only obliquely incriminated him. The cross-examination of Havard by appellant's counsel revealed Havard did not tell appellant the pumps did not belong to him and he would in fact change his story for a lighter sentence.

 The State also called Officer Cire, who presented Havard's handwritten statement. Cire read Havard's statement in full, and it was admitted into evidence without objection. Officer Cire testified that Havard's statement "reflected the dis-

---

**3.** "A statement is not hearsay if: (1) *Prior Statement by Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: (A) inconsistent with the declarant's testimony, and was given under oath . . . at a trial, hearing, or other proceed- ing . . . in a criminal case. . . ." TEX.R. EVID. 801(e)(1)(A).

**4.** Havard, on direct examination by the State, had already admitted to having been convicted of "a couple" of felony offenses.

cussion that Cire had with [appellant]," but later corrected himself and said the statements from appellant and Havard were different. Appellant was in custody at the time he spoke with Cire, and his statement was not recorded or in writing. Appellant's attorneys made no objection to Cire's testimony about his custodial interrogation of appellant, although such testimony was inadmissible. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.2002) (prohibiting admission of unrecorded oral statements made during custodial interrogation). Nor did counsel object that Havard's written statement, which was read verbatim by Cire, admitted in evidence as a physical exhibit, and requested by the jury during deliberations, should be excluded because Havard had already admitted having made the statement.[5] The Court of Criminal Appeals has held that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Hughes v. State*, 4 S.W.3d 1, 4 n. 4 (Tex.Crim.App.1999).

■ Determining whether valid objections could have been made does not end the inquiry. The facts of this case demonstrate why a hearing is generally needed for motions for new trial wherein allegations of ineffective assistance of counsel are made. Here, as in *Thompson*, the record is silent as to why appellant's counsel did not object to what was inadmissible evidence and allowed the improper impeachment of his co-defendant. We must, therefore, assume a strategic motivation if any can be imagined, and we shall not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent

attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440.

In what may well be considered *the* authority on trial advocacy, *The Art of Cross–Examination*, Francis L. Wellman noted, "... it may be said that the truly great trial lawyer is he who, while knowing perfectly well the established rules of his art, appreciates when they should be broken." FRANCIS L. WELLMAN, THE ART OF CROSS-EXAMINATION, 132–33 (4th ed.1986). Furthermore, before challenging particular testimony, an advocate must be free to consider whether the testimony was credible in the first place:

> Sometimes a witness will not "come off right" and both the witness and his testimony are unbelievable. Other times a witness will be substantially contradicted by other witnesses. In those situations the damage has been done before you can do anything, so leaving well enough alone may be the soundest approach.

THOMAS A. MAUET, TRIAL TECHNIQUES, 248–49 (5th ed.2000).

In regard to making objections, advocates must be free to choose not to make them even if they have a legal basis for doing so. While objections are absolutely necessary to preserve error, jurors often see lawyers who make them as "trying to keep the real truth from them." *Id.* at 465. More importantly, a lawyer may strategically decide to allow the other side to introduce otherwise inadmissible evidence because it simply does not hurt the client's case or, in fact, may help it. If a lawyer is reasonably sure certain evidence will not hurt his client's case, "it is usually better not to object." *Id.* at 466.

When asked by the trial court, prior to trial, what evidence it had that appellant

---

**5.** If a witness unequivocally admits having made a prior inconsistent statement, extrinsic evidence of the statement shall not be admitted. TEX.R. EVID. 613(a).

was guilty, the State responded that Havard had given "several incriminating statements," noting an inconsistency. However, it does not necessarily follow that the State called Havard to testify "for the sole purpose of impeaching him with his prior statements to the police." The State had additional evidence in its arsenal. As discussed above, there was sufficient circumstantial evidence from which the jury could infer that appellant knew he and Havard were stealing the pumps. More importantly, the record reveals that Havard, according to his pretrial statement, was supposed to testify that he and appellant took the water pumps and put them in the back of the truck *"with the intent of pawning them and [Havard] using [appellant's] ID because [Havard] did not have one."* (Emphasis added.) Regardless of Havard's prior statements, the record reveals appellant's trial counsel was aware of the evidence the State had against his client, and had a sound trial strategy to deal with that evidence.

 It appears from the record the State offered the testimony of Havard solely to place appellant at the scene of the theft of the pumps. The record demonstrates, and it is undisputed, that Havard was an unreliable witness. It seems apparent from the record that appellant's counsels' trial strategy was to prove that, consistent with Havard's trial testimony, appellant did not know they were "stealing" the two water pumps and to completely discredit Havard as a person who would say anything to reduce his punishment. When the State later offered Havard's written statement into evidence through Officer Cire, by not objecting, appellant's

counsel merely allowed into evidence further proof of Havard's duplicity.[6]

The jury argument of appellant's counsel reinforced this strategy, focusing on several of Havard's inconsistent statements, especially his written statement:

> [Havard] has shown a *pattern of willingness to testify to what's convenient in his interest at the time* to shift the blame, shift the burden, to shift the responsibility of this crime away from himself.

(Emphasis added.) In closing argument, appellant's counsel also emphasized the deal Havard made with the State as further proof of his unreliability: "Havard has told several different stories. And he also admitted that he was given a one-year sentence when he originally was facing a term of two to 20 years."

It appears this was a sound trial strategy that could and should have worked. However, the record reveals that Havard was too clever by half, as indicated by the testimony of the bailiff regarding Havard's comments on the return trip to the jail. Even under these circumstances, appellant's counsel was able to utilize Havard's written statement and Havard's other inconsistent statements on the cross-examination of Deputy Cleeman to show Havard was simply unreliable, was not a person Cleeman would believe, and "was supposed to do a story for the D.A."

Based on the record presented, we cannot say as a matter of law that trial counsel's performance was deficient. We hold appellant has not carried his burden on this portion of his claim of ineffective assistance of counsel.

---

**6.** Moreover, the record reveals the State did not offer the written statement as proof of appellant's guilt. Rather, it appears the State was conceding Havard's prior inconsistent statements before appellant's counsel had a

chance to bring them out on cross-examination. In fact, the State got Havard to concede the written statement was not true, and asked, "why should we believe your [in-court] statement now?"

**Limiting Instructions**

 Appellant further argues his counsel was ineffective for failing to request certain limiting instructions. He contends his trial counsel should have requested a jury instruction that Havard's prior inconsistent statements could not be considered evidence of appellant's guilt and could only be considered for the limited purpose of impeaching Havard's credibility. *See Contreras v. State,* 766 S.W.2d 891, 892–93 (Tex.App.-San Antonio 1989, no pet.). Given the fact that Havard disavowed such statements and conceded they were false, no such instruction was necessary.

 Appellant further argues his trial counsel was ineffective for attacking Havard's credibility in closing argument without requesting an accomplice witness instruction. *See* Tex.Code Crim. Proc. Ann. art 38.14 (Vernon 1979). However, such instruction would have clearly weakened the impact of Havard's testimony that appellant did not assist in planning the theft and was not told the pumps were being stolen.

Again, based on the record presented, we cannot say that trial counsel's performance was deficient as a matter of law in this area, and we hold appellant has not carried his burden on this portion of his claim of ineffective assistance of counsel.

**Jury Argument**

Appellant further argues his trial counsel was ineffective for failing to object to improper jury argument advanced by the State. During closing argument, the State argued appellant was guilty because he refused to confess in writing. The argument was as follows:

Now, as far as the culpability of [appellant] is concerned defense has brought up one other argument that you need to

concern yourself with. What about the statement that you didn't hear that he made to Officer Cire. He was willing to spill his guts to Officer Cire but he wouldn't put anything down on paper. *And when he did spill his guts it didn't match any of the stories that Mr. Havard told.* Ask yourself that question. Is he as innocent as he's claiming he is when he's willing to spill his guts, but when it comes down to putting pen to paper he won't do it. Is that because he knew he'd be caught in his own lies and that's why he believes with his buddy getting up there crucifying himself he'd be getting off? Don't be getting off that easy. He's insulted you and insulted this Court with his own lack of writing and he's done it with his buddy to do the same thing in here.

(Emphasis added.)

 A defendant does not have to give any statement to the police after his arrest, and a prosecutor's comment on a defendant's refusal to do so violates the defendant's due process rights. *United States v. Rodriguez,* 260 F.3d 416, 420–21(5th Cir.2001). On both direct and cross-examination, Officer Cire stated that appellant gave an oral statement after his arrest. Cire stated that appellant's oral statement was different from Havard's written statement.[7] Assuming the prosecutor's argument on this issue was improper, he emphasized the fact that appellant's alleged statements to Officer Cire, which were never presented to the jury, *differed* from the custodial statements given by Havard. This was exactly the point appellant's trial counsel was trying to establish through cross-examination of Havard— that Havard's initial statements to the police differed from his trial testimony be-

---

**7.** Appellant's trial counsel did not object to this testimony, and his appellate counsel does

not argue trial counsel was ineffective for failing to do so.

cause they were fabricated in an attempt to get a lighter charge. Thus, we cannot say as a matter of law that trial counsel was deficient for failing to object to such argument.

Appellant's trial counsel also did not object when the State argued to the jury that appellant knew the pump was stolen because he knew Havard was taking it to a pawnshop. On direct examination by the State, Havard denied testifying that he intended to sell the pumps at a pawn shop. No such evidence was ever presented, and such argument was clearly outside the record. Havard also testified, when asked whether appellant knew the pumps were being stolen, "I never said we were stealing. I never said we was, I never said we wasn't."

There was other circumstantial evidence from which the jury could have inferred appellant knew the pumps were being stolen, including the unusual manner in which appellant was offered a chance to "make some money," the obvious damage to the truck's steering column, and the difference between the logo on the truck and Havard's shirt (a tree trimming company), and the location of the pumps (a construction site).

Given the record presented, we cannot conclude that, but for trial counsel's failure to object at this point, there is a reasonable probability the result of the proceeding would have been different. Therefore, we hold appellant has not carried his burden on this portion of his claim of ineffective assistance of counsel.

**Value of Property**

Appellant asserts his trial counsel was ineffective for not questioning the pump's owner about the value of the stolen pump. The pump's owner, Atkinson, testified the pump was worth approximately $1700. On cross-examination, he testified the pump was one year old and had been in industri-

al use in his business. No evidence showed whether the value, as given, was the amount paid to purchase the pump as new, the amount necessary to replace the pump new, or the pump's fair market value at the time and place of the offense. *See* TEX. PENAL CODE ANN. § 31.08(a)(1) (Vernon 1994). The value of approximately $1700 is close to the $1500 minimum amount the State was required to prove in order to prove a felony offense. TEX. PENAL CODE ANN. § 31.03(e)(3) (Vernon Supp. 2002).

▪ Appellant's trial counsel did not cross-examine the owner about the value of the pump or present an expert on this topic. In the absence of any affirmative evidence that the pump was not worth $1700 as the owner testified, we cannot conclude the failure to cross-examine the owner on the issue was deficient, or that, but for trial counsel's failure to cross-examine the owner on this point, there is a reasonable probability the result of the proceeding would have been different. Accordingly, we hold appellant has not carried his burden on this portion of his claim of ineffective assistance of counsel.

In summary, in regard to appellant's contentions that his trial counsel was ineffective, we simply cannot say that his trial counsel's performance was deficient based on the record before us. Appellant has not overcome the presumption that his trial counsel's actions might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064; *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). To find trial counsel ineffective based on the asserted grounds would call for speculation in which we will not engage. *Gamble,* 916 S.W.2d at 93. Appellant has not rebutted the presumption that his trial counsel made all significant decisions in the exercise of reasonable

professional judgment, and appellant has not demonstrated in the record that counsel rendered ineffective assistance. *See Thompson,* 9 S.W.3d at 814.

We note, with some significance, that trial counsel obtained a verdict of "not guilty" on appellant's behalf for the truck theft charge. The fact is that much of appellant's counsel's apparent trial strategy would not only be explainable at a hearing on a motion for new trial, but would be considered sound under the teachings of Wellman and Mauet.

We overrule appellant's third point of error.

### Conflict of Interest

In his fourth and fifth points of error, appellant contends a conflict of interest with his trial counsel denied him his constitutional right to conflict-free representation, and the trial court erred in not conducting a hearing concerning this conflict.

■■■■ A defendant does not have the right to his own choice of appointed counsel, and unless he waives his right to counsel and chooses to represent himself or shows adequate reason for the appointment of new counsel, he must accept the counsel appointed by the court. *Garner v. State,* 864 S.W.2d 92, 98 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). A trial court is under no duty to search until it finds an attorney agreeable to the defendant. *Id.* However, there are certain circumstances in which a defendant may, upon a proper showing, be entitled to a change of counsel. *Id.* A defendant must bring such a matter to the trial court's attention and must carry the burden of proving he is entitled to new counsel. *Malcom v. State,* 628 S.W.2d 790, 791 (Tex. Crim App. [Panel Op.] 1982) (citing *Webb v. State,* 533 S.W.2d 780, 784 n. 3 (Tex. Crim.App.1976)).

■■■■ An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Ex parte Morrow,* 952 S.W.2d 530, 538 (Tex.Crim.App.1997). In order for an appellant to demonstrate a violation of his right to reasonably effective assistance of counsel, based on a conflict of interest, he must show (1) that counsel was actively representing conflicting interests, and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Id.* When a trial court knows, or reasonably should know, that a particular conflict of interest exists, the court should initiate an inquiry. *Cuyler v. Sullivan,* 446 U.S. 335, 346–47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980); *Garner,* 864 S.W.2d at 99.

Two months after appellant's counsel was appointed by the trial court, appellant filed a pro se motion requesting the trial court to dismiss his court-appointed counsel and appoint new counsel. As grounds for his counsel's dismissal, appellant alleged counsel had ignored his requests to file a motion seeking an examining trial and to obtain a trial setting. Appellant also alleged counsel was "made aware" that appellant was merely a passenger in Havard's truck and was innocent of the charges brought against him. Although appellant requested a hearing on his motion, it does not appear from the record that this motion was ever presented to the trial court. There is no record of a hearing on this matter.

One month later, counsel for appellant filed a motion to withdraw as attorney of record. As grounds for withdrawal, counsel alleged "a conflict of interest exists between the Defendant and said Attorney." Counsel stated that appellant had "instituted an action against said attorney

that puts them in adversarial positions," and stated his belief that "said lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client." No details of the "action" brought against counsel were given, nor was the nature of the proceeding described. No hearing was requested by counsel, and the record does not indicate whether the motion was ever presented to the trial court or whether a hearing was conducted on the motion. No mention of the alleged conflict of interest was brought to the court's attention at trial, and counsel represented appellant throughout trial.

Trial counsel filed a motion for new trial for appellant the same day the judgment was signed, and the trial court appointed appellate counsel for appellant on the same day. Appellant subsequently filed a pro se motion for new trial. In addition to arguing the merits of his case in the motion for new trial, appellant also alleged the trial court erred in not dismissing his trial counsel and appointing new counsel. Appellant alleged he had filed an "official grievance" against his trial counsel with the "Bar Association" approximately one month prior to trial, based on counsel's alleged failure to file preliminary motions on appellant's behalf. Appellant indicated that the Bar had not taken any action on his grievance, and that he had appealed this ruling to the "Board of Disciplinary Appeals."

■ The filing of a civil action against a court-appointed attorney is not a *per se* conflict of interest warranting disqualification of counsel at the whim of a criminal defendant. *Dunn v. State*, 819 S.W.2d 510, 519 (Tex.Crim.App.1991). If a *per se* rule were applied, a defendant could delay or prevent a trial by simply filing a civil suit against his court-appointed counsel. Because no copy of the "grievance" allegedly filed by appellant against trial counsel is contained in the record, we cannot ascertain the specific allegations of that grievance. Appellant has shown the mere possibility of a conflict of interest, and such possibility, without more, is not sufficient to impugn his conviction. *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719; *Garner*, 864 S.W.2d at 99.

■ Further, as noted above, an appellant must show the alleged conflict of interest had an adverse effect on counsel's performance. *Morrow*, 952 S.W.2d at 538. Here, even assuming the existence of an actual conflict of interest between appellant and his trial counsel, counsel nonetheless obtained a jury verdict of "not guilty" on one of the two offenses charged, the theft of the truck.

We hold appellant has not shown either the existence of an actual conflict of interest or an adverse effect on his counsel's performance arising from such alleged conflict. Accordingly, we overrule appellant's fourth point of error.

■ There is no indication in the record that appellant's motion to dismiss his appointed counsel, or counsel's motion to withdraw, were ever presented to the trial court for a ruling, and appellant did not request to present the matter to the court at his trial. A defendant carries the burden to bring such matters to the trial court's attention. *Garner*, 864 S.W.2d at 99. The record indicates appellant did not do so in this case, and we hold the trial court did not commit error by not conducting a hearing on this matter. Further, the trial court was not required to consider appellant's *pro se* motion for new trial. At the time it was filed, appellant was represented by appointed appellate counsel. There is no right to hybrid representation. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim.App.1981).

We overrule appellant's fifth point of error.

### Conclusion

We affirm the judgment of the trial court.

En banc consideration was requested, and a majority of the Court voted for en banc consideration of the panel's decision.

En banc Court consists of Chief Justice SCHNEIDER and Justices COHEN, MIRABAL, WILSON, HEDGES, TAFT, NUCHIA, JENNINGS, RADACK, and DUGGAN.

Justice COHEN, dissenting to the en banc decision, joined by Justice Duggan.

Justice RADACK not participating.

MURRY B. COHEN, Justice, dissenting.

To show ineffective assistance of counsel, appellant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

On the morning of appellant's trial, the State made a deal with Havard, who agreed to plead guilty to both offenses and testify against appellant in exchange for concurrent one-year sentences. To seal its deal, the State required Havard to state in a pretrial hearing, under oath, what his testimony would be:

Q: (By the prosecutor) And in exchange for your testimony against Mr. McKinny, you have been given the offer of one year stay in jail and both cases to run concurrently; is that correct?

A: Yes, sir.

Q: In [sic] the testimony that you intend to offer at today's trial, is that you had picked up Mr. McKinny and the two of you—you had asked him if you were—if he wanted to make some money and he said yes. The two of you then proceeded to take two water pumps from a location in Harris County, put them in the back of the truck with the intent of pawning them and you using Mr. McKinny's ID because you did not have one; is that correct?

A: Yes.

Q: Is that what your testimony will be today?

A: Yes.

Q: When you testify?

A: Yes. . . .

Q: Is there anything else you wish to add about your involvement with Mr. McKinny with regards to the pumps?

A: I drove towards the metal container that the pumps were in and I seen the pumps in the container. I couldn't lift them by myself so I went looking for the first person I seen and he just happened to be walking down the street there. I pulled over and asked him if he wanted to make some money. He said yes. He needed a ride and I told him I'd give him a ride and he got in. I pulled up towards the pumps were just a few hundred yards down the road. I pulled up, we put the pump in the truck and then when I was pulling out, it wasn't but right down the street, I got pulled over.

Q: (By the Court, to Havard) Where does the car theft come in?

A: It was a separate offense from earlier, happened about a month prior to this particular date.

Q: How did you all steal the car?

A: The car. The car I was driving was stolen.

Q: Did he [appellant] know that?

A: I didn't tell him. I didn't ask so I mean.

Q: Did he know the pumps were stolen?

A: I didn't tell him and he didn't ask but you know—

Q: (By the Court, to the prosecutor) So how are you all, [the State] going to prove that he's guilty?

A: (By the prosecutor) You still want this on the record?

Q: Yeah. What's the evidence that he's [appellant's] guilty?

A: He [Havard] had given several incriminating statements. His [Havard's] statement did not match with this particular story as to where the property came from.

Thus, the trial judge realized that Havard's testimony put appellant at the crime scene loading the pumps, but that testimony did not show that appellant did so knowingly. In response to the judge's question asking how the State would prove appellant guilty, the prosecutor stated he would rely on Havard's prior inconsistent hearsay statements to prove appellant's guilt. Even though the law does not allow

that, appellant's attorney allowed it, and that is exactly what the prosecutor did.

At trial, the State called Havard, who testified that he and appellant had loaded the pumps. Havard did not then mention the part of his pretrial testimony that favored appellant, i.e., that Havard had approached appellant on the street and offered appellant money to load the pumps, without telling appellant that the truck was stolen and the pumps were being stolen. Although the State had elicited that testimony from Havard outside the jury's presence only minutes before, the State never presented it to the jury. Instead, the State asked Havard about his written statement to police when arrested. The State asked Havard for the "high points" of that statement, and he testified:

On that particular one, I think I showed that I got two black guys to—*they picked me up at some store and got me to go help them steal some stuff.* Now let's see. I got them to pick me up at the store and we went to the place to get the water pump and then *they showed me where it was and they wanted me to drive.* I think that's what I said.

(Emphasis added.)

Defense counsel made no objection (except "leading") to this testimony. He did not object to hearsay, nor did he object that the prior statement was not admissible to impeach Havard because Havard had not testified to the contrary. Both objections would have been meritorious.[1] Later, when the State offered into evidence this entire statement (State's exhibit 5), defense counsel again failed to object.

---

1. "A statement is not hearsay if: (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: (A) *inconsistent with the declarant's testimony, and was given under oath* ... at a trial, hearing, or other proceed- ing ... in a criminal case, or in a deportation; ...." Tex.R. Evid. 801(e)(1)(A) (emphasis added). Havard's statement (State's exhibit 5) was not under oath, was not inconsistent with any testimony Havard had then given in appellant's trial, and was therefore hearsay.

Defense counsel then cross-examined Havard and brought out the testimony—favorable to appellant—that Havard had promised the State in exchange for his plea agreement; defense counsel failed, however, to tell the jury that *the State* had just induced this exculpatory testimony from Havard:

Q: (By Mr. Broussard) Let's go back to what happened before you and Mr. McKinny went to this container. You gave—you picked Mr. McKinny up, didn't you?

A: Yes.

Q: You were driving the truck that was supposedly stolen?

A: Yes, sir.

Q: And where did you pick up Mr. McKinny?

A: On JFK. He was hitchhiking.

Q: Okay. Why did you pick him up, because he was hitchhiking?

A: Because I needed somebody to help me lift the water pumps because they were too heavy for me to lift by myself.

Q: So when you picked him up did you ask him to help you?

A: I asked him if he wanted to make a few dollars, some money and he said he needed a ride. I told him to get in.

Q: Okay. And did you proceed from that point to where the container was?

A: Yes, sir.

Q: You asked him to get out and help you load those?

A: Yes, sir.

Q: Did you tell him that these weren't your pumps?

A: I didn't make a statement either way. I didn't say yes, I didn't say no.

Q: You didn't tell him "we're stealing these pumps, they're not mine"?

A: No, sir.

Q: You just asked him to help you load them?

A: Yes, sir.

Q: How long did it take ya'll to load the pumps?

A: Probably one minute or so, maybe two minutes at the most. I mean, they were pretty simple to load up. I mean, the hardest thing is just getting out of the truck walking back there and reaching down, you know, and picking them up. They're not all that heavy, just takes two people. And then sitting them in the back of the truck, closing the door and then getting back in the truck and driving off, probably two minutes.

Q: You never met Mr. McKinny before that, did you?

A: No, sir. No.

Thus,

1. The State, as a condition of its plea bargain offer to Havard, created testimony favorable to appellant, but never presented that testimony to the jury. Instead, the State had Havard testify (without defense objection) about State's exhibit 5, Havard's unsworn hearsay statement made shortly after his arrest that appellant had instigated the crime while Havard innocently participated;

2. Appellant's attorneys then brought out Havard's favorable testimony, but they never informed the jury that, in a pretrial hearing outside the jury's presence only minutes before, the State (a) had bargained for that very testimony, (b) had promised leniency to a repeat felony of-

fender to get it, and (c) had presented it, under Havard's oath, to the Court at the pretrial hearing as though it were the truth; and

3. The State then spent most of the rest of the trial presenting Havard's multiple pretrial statements that appellant had picked him up in a stolen truck and offered him money to load the pumps, while Havard never knew the truck or the pumps were stolen. The State did this even though Havard's trial testimony never varied materially from what he had promised the State he would give. By this strategem, the State was able to try almost the entire case on hearsay evidence, all or most of which would not have been admissible except to impeach the "false" version the State had bargained for outside the jury's presence just before trial.[2]

Appellant's attorneys never objected to the State's using leniency to induce what the State itself called perjured testimony and then avoiding hearsay rules by "impeaching" that testimony. They never tried to blunt the State's attack on Havard by telling the jury of the State's role in creating the very testimony the State was now impeaching. They never objected that State's exhibit 5 was hearsay. *See* Tex.R. Evid. 801(e)(1)(A). And they never asked for a jury instruction that Havard's prior inconsistent statements were not evidence of appellant's guilt, but were instead admitted only for the limited purpose of impeaching Havard. *See Contreras v. State*, 766 S.W.2d 891, 892–93 (Tex.App.-San Antonio 1989, no pet.) (reversing for failure to give such instruction).

For example, the State called Officer Bray to impeach Havard on how many pre-trial statements he had made to the police. The judge ruled that the State could impeach Havard if he had misstated the number of statements he had given, but the State could not go into the contents of any omitted statement. Despite this ruling, the State offered the contents of Havard's statement to Bray, which incriminated appellant, and appellant's attorneys did not object to that as hearsay or request a limiting instruction regarding impeachment.

The State next called Officer Cire, who presented State's exhibit 5, Havard's written statement, a damning piece of unsworn hearsay that came in without objection or limitation and that the jury requested during deliberations. Cire read Havard's statement as follows:

A: Read the best I can. "1 p.m. I [Havard] was at 59 and Laura Koppe sleeping under a bridge. I woke up and was walking to the store to bum something to eat. Two black males pulled up and asked me if I wanted to go make some money. I said yes. I got in the truck and we went to the store. I was brought two sandwiches and a bag of chips, a Coke. We left and we went to a house. The man driving got out and five minutes later he returned. We went back to the store, the driver left in a white car. And I was told—then I was asked to drive because the other one did not know how to drive a standard. I did. I was told where to go and then we pulled up in front of a railroad box car on the ground is what it said

---

2. In jury argument, the State called Havard, its own witness, a liar. The prosecutor said that Havard perjured himself when he testified as he had promised the State in exchange for what the prosecutor called "a sweet deal." The State should not be so proud of offering sweet deals to induce its witnesses to commit perjury.

and we loaded up the two water pumps. We left and I was pulled over."

Officer Cire testified that Havard's statement "reflected the discussion that Cire had with Mr. McKinny," but Cire later said the statement was different. Appellant was in custody when he spoke with Cire, and appellant's statement was not recorded or in writing, but appellant's attorneys made no objection to Cire's testimony about his custodial interrogation of appellant. Such testimony was inadmissible. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 1979). Nor did they object that Havard's statement (State's exhibit 5), which was read verbatim by Cire, admitted in evidence as a physical exhibit, and requested by the jury during deliberations, should be excluded because Havard had already admitted having made the statement.[3]

Next came Officer Dunn, who testified to more hearsay. Dunn testified he took Havard's oral statement and it was consistent with State's exhibit 5, Havard's written statement. This further implicated appellant, but, again, his attorneys did not object to hearsay or request a limiting instruction. The State later argued to the jury that this testimony by Dunn showed the reliability of Havard's statements in State's exhibit 5.

At this point, Havard was recalled by the State and again testified as he had promised the State in exchange for his guilty plea. Again he was impeached, again without objection, again without limiting instruction, again without the jury being informed of the State's connection to this testimony.

The Court of Criminal Appeals and almost all federal courts of appeals have held that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Hughes v. State,* 4 S.W.3d 1, 4 & nn. 4, 7 (Tex.Crim.App.1999) (collecting federal cases).[4] That is what happened here. Appellant's counsel allowed it to happen by (1) not objecting to hearsay, or, as in the federal cases, to the abuse of Rule 607 regarding impeachment of one's own witness, or, as in *Hughes,* based on Rule 403; (2) not requesting a limiting instruction; and (3) not revealing the State's role in creating Havard's testimony.

There is more. Appellant's attorneys did not object when the State argued to the jury that appellant was guilty because he refused to confess in writing:

> Now, as far as the culpability of Mr. McKinny is concerned defense has brought up one other argument that you need to concern yourself with. What about the statement that you didn't hear that he made to Officer Cire. He was willing to spill his guts to Officer Cire but he wouldn't put anything down on paper. And when he did spill his guts it didn't match any of the stories that Mr.

---

3. Tex.R. Evid. 613(a) governs the examination of witnesses concerning prior inconsistent statements and provides, "... if the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted...." Havard unequivocally admitted having made the statement; thus, given an objection under Rule 613(a), extrinsic evidence of the statement should not have been admitted.

4. *See also Adams v. State,* 862 S.W.2d 139, 147–48 (Tex.App.-San Antonio 1993, pet. ref'd); *Zule v. State,* 802 S.W.2d 28, 34 (Tex. App.-Corpus Christi 1990, pet. ref'd); *Pruitt v. State,* 770 S.W.2d 909, 910–11 (Tex.App.-Fort Worth 1989, pet. ref'd); *Contreras v. State,* 766 S.W.2d 891, 892–93 (Tex.App.-San Antonio 1989, no pet.) (held, error not to give limiting instruction).

Havard told. Ask yourself that question. *Is he as innocent as he's claiming he is when he's willing to spill his guts, but when it comes down to putting pen to paper he won't do it.* Is that because he knew he'd be caught in his own lies and that's why he believes with his buddy getting up there crucifying himself he'd be getting off? Don't be getting off that easy. He's insulted you and insulted this Court with his own lack of writing and he's done it with his buddy to do the same thing in here.

(Emphasis supplied.)

In this state and country, a defendant does not have to confess. His refusal to do so is not evidence of guilt. *See United States v. Rodriguez,* 260 F.3d 416, 420–21 (5th Cir.2001).

Nor did defense counsel object when the State twice argued to the jury that appellant knew the pump was stolen because he knew that Havard was taking it to a pawnshop. In fact, there was no such evidence.

There are more ways in which counsel's performance weakens our confidence in the outcome of this case. *See Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064–65, 2068. The pump's owner was asked one question by the State about value, whether he had "any idea" of the pump's value. He testified that it was worth "approximately" $1,700. On cross-examination, he testified the pump was a year old and had been in industrial use in his business. No evidence showed whether "approximately $1,700" was the amount paid to purchase the pump new, the amount necessary to replace the pump new, or the pump's "fair market value [as used equipment, the correct value required by law] at the time and place of the offense." *See* TEX. PEN.CODE ANN. § 31.08(a)(1) (Vernon 1994). A value of "approximately $1,700" implies a range of value below $1,700, which is close to the $1,500 minimum amount the State had to prove in order to prove a felony offense. *See* TEX. PEN.CODE ANN. § 31.03(e)(3) (Vernon Supp.2002) (theft of less than $1,500 is a class A misdemeanor). Defense counsel never cross-examined the owner about this nor presented their own expert, but that shows no deficiency because such witnesses might have opined that the pump's fair market value on the date of the theft exceeded $1,500. That does not explain, however, why defense counsel did not point out that weakness in the State's proof and argue that any pump purchased new for "approximately" $1,700 and used for a year for industrial purposes would have depreciated at least $200 in value. That argument could have benefitted appellant and almost certainly would not have hurt him. The failure to make it does not alone render counsel ineffective, but it strengthens our conclusion that counsel's representation as a whole was far below what this Court should tolerate. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

Another indication of counsel's ineffectiveness was that in jury argument they attacked Mr. Havard's credibility, but at trial they never sought an accomplice witness instruction. *See* TEX.CODE CRIM. PROC. ANN. art 38.14 (Vernon 1979). Although defense counsel may have welcomed Havard's favorable testimony about appellant's lack of intent to steal and thus not have wanted to weaken it with such an instruction, counsel's jury argument that Havard could not keep his story straight and was a felon who would say anything to avoid responsibility belies that strategy and instead calls for such an instruction.

In this case, there was no motion for new trial hearing and thus no opportunity

for defense counsel to explain their strategy for letting in all this inadmissible evidence and argument. No such hearing is needed, however, because no conceivable strategy could justify this performance. This court has held counsel ineffective for a single egregious error, even without a motion for new trial hearing, when the error could not be justified by any conceivable strategy. *Cooper v. State,* 769 S.W.2d 301, 305 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd); *Snow v. State,* 697 S.W.2d 663, 667 (Tex.App.-Houston [1st Dist.] 1985, pet. dism'd); *see also Valencia v. State,* 966 S.W.2d 188, 191 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (counsel's multiple errors required reversal despite lack of new trial hearing); *Laurant v. State,* 926 S.W.2d 782, 783 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (same). We have here far more than a single error. Here, we have multiple serious deficiencies from beginning to end.

The deficiency was harmful. This case was defensible. Havard's testimony about appellant's lack of knowledge of Havard's intent to steal favored appellant, and that testimony would have seemed more persuasive if jurors had known the State's role in creating it. If the jury had known the prosecutor was impeaching as "perjury" the very testimony he had induced minutes earlier by offering a "sweet deal," the jurors may have doubted anything the prosecutor said. This was not a theft that occurred on a holiday, a weekend, or in the dark of night. It occurred at 2:00 p.m. on a regular business day. The pumps were loaded in two minutes or less from an unlocked container. No property was broken into to get them. Havard, although driving a stolen truck, was using a key and was wearing a shirt that bore the same logo as the truck. These facts supported appellant because they were consistent with appellant's not knowing the truck was stolen or that the pumps did not belong to Havard. Indeed, the jury acquitted appellant of the truck theft, and in a competently defended case, there is a reasonable probability that it would have acquitted him of the pump theft. A "reasonable probability" of a different result is all that *Strickland* requires, and a "reasonable probability" may be less than a preponderance of the evidence. *See Strickland,* 466 U.S. at 693–94, 104 S.Ct. at 2068. A "reasonable probability" does not mean "that counsel's deficient conduct more likely than not altered the outcome in the case...." Rather, "the appropriate standard of review should be somewhat lower." *Id.* "The result of the proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

If this case had been properly tried, most of the State's evidence would not have come in or would have been limited by instruction to impeachment of Havard, the State's witness. Jurors could not have considered that impeachment testimony as substantive evidence.[5] Jurors would have heard that appellant was a newly arrived hitchhiker who had helped the truck's properly uniformed driver, a four-time felon who had stolen the truck and who had just gotten, in the prosecutor's words in argument, a "sweet deal" from the State to commit what the prosecutor called perjury, to load a pump of questionable value.

I would sustain appellant's third issue, reverse the judgment, and remand the cause.

**5.** And neither could we, which would have considerably strengthened appellant's arguments that the evidence was legally and factually insufficient.