NO. 07-06-0123-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 31, 2006


______________________________



JAMES WELDON BURTON, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 16,692-B; HON. JOHN B. BOARD, PRESIDING


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Pending before us is appellant's motion to abate and remand this proceeding to the
trial court. The motion is based upon appellant's letter to his court-appointed counsel in
which he asks that counsel withdraw the brief filed in this matter and withdraw as his
counsel. Purportedly, appellant believes that the brief should be withdrawn because he
did not consent to it. The motion is denied for several reasons. 

 First, the motion is untimely. It was filed after the State tendered its responsive brief
and the cause was scheduled to be submitted for disposition. Second, an indigent inmate
is not entitled to counsel of his choice but must accept the counsel assigned him in
absence of adequate cause for the appointment of new counsel or an effective waiver of
the right to counsel. McKinney v. State, 76 S.W.3d 463, 477 (Tex. App.-Houston [1st Dist.]
2002, no pet.). We have no request before us by appellant to act pro se. Nor is the
possibility that appellant may not like the issues raised by his counsel basis for counsel's
removal. See King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (stating that
disagreements concerning trial strategy are typically not valid grounds for withdrawal);
Aguilar v. State, 651 S.W.2d 822, 823-24 (Tex. App.-Houston [1st Dist.] 1983, no pet.)
(holding that the defendant's stated purpose in having court-appointed counsel who would
follow his defense strategy regardless of counsel's own views does not constitute an
"adequate" reason for appointment of new counsel). 

 For these reasons, we deny appellant's motion to abate.


 Per Curiam



eForList/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0278-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

MARCH 11, 2011

_____________________________

 

JKR PERSONAL CARE, LLC d/b/a
HOME 

 INSTEAD SENIOR CARE,  

 

                                                                                    Appellant

v.

 

JEAN MARIE BRYANT,  

 

                                                                                      Appellee

_____________________________

 

FROM THE COUNTY COURT AT LAW
NO. 1 OF TARRANT COUNTY;

 

NO. 08-61706-1; HONORABLE R.
BRENT KEIS, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

 

Before QUINN, C.J.,
and HANCOCK  and PIRTLE,  JJ.

            JKR
Personal Care, L.L.C. d/b/a Home Instead Senior Care (JKR) appeals a take-nothing judgment granted in favor of
Jean Marie Bryant (Bryant) after a bench trial. 
JKR had sought to recover $12,865 for services allegedly provided to Bryants parents.   Recovery was sought on the basis of two
contracts she signed as her parents representative.  JKR contends that the trial courts decision
contradicted the evidence, which evidence allegedly established, as a matter of
law, that Bryant agreed to pay for the charges. 
We overrule the issue and affirm the judgment. 

            Background

            On
May 24, 2007, Bryant signed a Service Agreement to obtain home care services
for her parents, Timothy and Mary Lou Ford.  Per the
accord, the undersigned expressly bound themselves to pay for the Services
provided under this Agreement . . . .  Moreover, Timothy and Mary Lou
Ford were designated as the undersigned and the Client. 
Though Bryants name appears on the document, it did so under the
heading Clients Representative.[1]

            Of
record is another document entitled Plan of Care.  It was executed on June 9th,
approximately two weeks after the Service Agreement and described the
particular care to be given Timothy Tim Ford. 
Moreover, it expressly stated that Supervisor Visits and [sic] new Plan of Care will be performed
every: 180 days.  Bryant signed this
instrument above the title Client / Client Representative.  

            Unlike
the Service Agreement, the Plan of Care contained a statement specifying that
Home Instead Senior Care will invoice Client with receipt for all expenses
related to the care and the Client/Representative is
responsible for such charges.  (Emphasis
added).  Furthermore, Bryant testified
that she eventually signed three plans of care for her father as he got
worse and three for her mother as she got better.  No one presented evidence addressing whether
these additonal plans of care contained the same verbiage or described the same
obligations as that contained in
the June 9th writing.        

After Bryants parents died, JKR
sought to hold her personally liable for services owed.  The testimony from JKRs representative
disclosed that it knew Bryant signed the aforementioned agreements as the
representative of her parents.  Indeed,
no one disputes that she so signed the documents.  But, because the Plan of Care specified that
the Client/Representative would be responsible for the charges, JKR believed Bryant bound herself to pay for them
as well, despite the conditional nature of her signature.  That Bryant or her brother paid over $25,000
to JKR finds evidentiary support.  And,
it was a balance of $12,865 sought at trial. 


After hearing evidence from both
litigants, the trial court entered judgment denying JKR recovery. 
No findings of fact or conclusions of law were executed, however.

 Authority and Its Application

When trial is to the bench, as
opposed to a jury, and no findings of fact have been executed, we may imply the
existence of findings that support the outcome and enjoy evidentiary
support.  Hayes v. Anderson, 315 S.W.3d 170, 173 (Tex. App.Tyler 2010, pet. denied).  

Next, an agent signing a contract for
the benefit of a disclosed principal generally is not personally liable on the
contract.  Roe v. Ladymon, 318 S.W.3d 502, 515 (Tex. App.Dallas 2010, no pet.); see also Harco Energy, Inc. v. Re-Entry People, Inc., 23 S.W.3d
389, 392 (Tex. App.Amarillo 2000, no pet.) (stating that a person who acts as
an agent for another when making a contract must disclose his agency capacity
and identify the principal in order to avoid personal liability); Bersen v. Live Oak Ins. Agency, Inc., 52 S.W.3d
306, 309-10 (Tex. App.Corpus Christi 2001, no pet.) (stating the same).  As previously mentioned, evidence appears of
record illustrating not only that Bryant signed her name on the Service
Agreement under the heading Clients Representative, but also that JKR knew she was
executing the document in that capacity. 
Thus, the trial court had basis to find that she acted as the disclosed
agent for her parents under that agreement and did not personally assume the
liabilities imposed by it.

As for the obligation imposed by the
June 9th Plan of Care, we assume arguendo that a
disclosed agent can expressly agree to personally satisfy the principals
obligations.  We further assume, arguendo, that the provision within the June
9th Plan  stating that the Client/Representative
was responsible for the charges made Bryant individually responsible for their
payment.  Yet, that document limited that
responsibility to all expenses related to the care of the client.  It said nothing about that responsibility
encompassing care rendered under subsequent plans of care executed by the
parties.  This is of import because the
June 9th writing required the execution of subsequent plans, and Bryant
testified that she actually signed subsequent plans for both her mother and
father.  And, as previously noted, whether
those subsequent plans held clauses saying that Client/Representative was responsible for expenses related to
the care appears nowhere of record.  

Nor is there evidence of record
describing the nature of the services comprising the $12,865 outstanding
balance sought by JKR.   While the
litigants did stipulate that $12,865 was due the company, the stipulation
disclosed to the trial court failed to state that the expenses or services
comprising that sum were related to the care of the client under the June 9th
Plan of Care.[2]  It may well be that the only services
provided by JKR were of that ilk. Or, it may be that it provided services
outside that category.  But, to conclude
one way or the other would simply be a guess on our part, or on that of the
trial court, for that matter, and that is something neither of us can do.   Nonetheless, the only document that could be
read as binding Bryant to pay JKR anything is the June 9th writing, and that
writing limits the obligation solely to expenses related to care. 
Thus, it was incumbent upon JKR to present some evidence illustrating
that the outstanding balance related to the provision of care or that the
services afforded the clients fell within that category.[3]               

Also of note is the evidence that
since execution of both the Service Agreement and June 9th Plan of Care, over
$25,000 had been paid to JKR. 
Furthermore, only $672 was due for expenses incurred by client Timothy
C. Ford as of September 12, 2007.  This,
when coupled with the evidence that Bryant executed subsequent plans of care,
does not necessarily require one to infer that the $12,865 for services sought
at trial (assuming they related to the provision of care) related to the care
provided under the June 9th Plan.  It may
well be that they related to care provided under some other plan of care which
may or may not have had clauses binding both the client and representative to
pay.  Simply put, we do not know, and the
record before the trial court did not obligate it to so deduce. 

Finally, the June 9th writing names Timothy Tim
Ford as the client and establishes a plan of care for him.  It says nothing of his wife, Mary Lou.  Furthermore, it describes how the Client/Representative
would be responsible for such charges, those being the expenses contained in
the invoice sent to the client, Timothy Tim Ford.  Given this, the provision allegedly requiring
the representative, Bryant, to also be responsible for such charges obligates
the representative to only pay for the care rendered to Timothy Tim Ford.  Now, the record contains evidence
illustrating that services were provided by JKR to Timothy and Mary Lou.  Whether the services to both comprised any
part of the $12,865 sought at trial is unclear. 
The June 9th writing does name Timothy as the customer, but
whether customer meant only Timothy or both Timothy and Mary Lou is
unknown.  If it included services
rendered to both, then the words used in the June 9th Plan were not
enough to bind Bryant to pay for services attributable to Mary Lous care.  Moreover, the stipulation executed by the
parties did not fill that void.            

In short, the factfinder could
reasonably have construed the evidence of record as failing to establish or to
provide sufficient links establishing, as a matter of law, that Bryant, as the
representative of her parents, contracted to pay for the $12,865 sought by JKR
at trial.  Accordingly, we affirm the
judgment of the trial court.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice            











[1]Bryant
testified at trial that she had power of attorney for her parents.  





[2]The
trial court was told that:  [o]posing
counsel and I have agreed to stipulate to one point, that necessary attorneys
fees are $4,500 for the Plaintiff [and] [t]he amount due for the services rendered by the Plaintiff is
$12,865.  (Emphasis added). 

 





[3]The
June 9th Plan stated that the [c]lients are responsible for furnishing or
providing monies for supplies.  This
suggests not only that JKR was itself a potential source of supplies but also
that the debts due the company from its clients could arise from either the
provision of supplies or the provision of care and services.   And, the Client/Representative, if
anything, bound itself to pay only for care, under the June 9th Plan.