Algreen **ALEX**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–96–00032–CR.

Court of Appeals of Texas, Tyler.

Aug. 28, 1996.

788

R. Daryll Bennett, Longview, for appellant.

Kyle Freeman, Henderson, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Algreen Alex, Jr. ("Appellant") appeals his conviction for the murder of Shemoka Lynn Williams. The jury assessed Appellant's punishment at thirty years' imprisonment. We will **affirm**.

In his first and second points of error, Appellant contends that the evidence adduced at trial was neither legally nor factually sufficient to support the jury's finding of guilt. Specifically, Appellant argues that the shooting was an accident and that the evidence is insufficient to prove that he intentionally or knowingly shot the victim. We disagree.

■ When an appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether evidence adduced at trial was legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 130 (Tex.Cr.App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Cr.App.1991); *Richardson v. State,* 879 S.W.2d 874, 879 (Tex.Cr.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a mere modicum of evidence." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Cr.App.1988).

■ After an appellate court determines that the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to review factual sufficiency. *Clewis,* 922 S.W.2d at 130. In conducting a factual sufficiency review, this Court must view all the evidence impartially and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis,* 922 S.W.2d at 130–31; *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

■ In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Beardsley v. State,* 738 S.W.2d 681 (Tex.Cr.App.1987). Circumstantial evidence cases have no different standard of review than those cases supported by direct evidence. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Cr.App.1991).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b) (Vernon 1994). In order to convict a person of an offense, the State must prove every element of the offense beyond a reasonable doubt. TEX.PENAL CODE ANN. § 2.01 (Vernon 1994).

On February 4, 1995, Appellant and his wife,[1] Shemoka Lynn Williams ("Shemoka"), visited Appellant's grandmother. Appellant and Shemoka drove into the yard. Appellant's brother, Albert, approached them. Appellant and Shemoka were arguing, as they had been earlier in the day. Shemoka said that she was tired of Appellant threatening her. Shemoka was sitting in the driver's seat of the car with one foot in the car and one foot out of the car. While they were arguing, Appellant went to the trunk of the car and got out his shotgun. Appellant walked to the driver's side of the vehicle. Because Appellant and Shemoka were still

---

1. Shemoka Lynn Williams is referred to both as Algreen's wife and girlfriend. Their actual marital status is unclear, but not critical to a disposition of this case.

arguing, Albert turned away and started to walk around the house. When Appellant's gun went off, Albert turned back around and saw the gun in Appellant's hands.

At trial, both Dr. James Repasky, a treating physician, and Donald Wiggins, an investigator with the Rusk County Sheriff's Department, recounted a dying declaration made by Shemoka. In the presence of both Repasky and Wiggins, Shemoka stated that she had been shot by her husband, and that the shooting was not an accident. When Wiggins specifically asked if the shooting was accidental or on purpose, Shemoka stated that Appellant shot her on purpose.

Dr. Charles Odom, a medical examiner from the Dallas County Medical Examiner's Office, performed an autopsy on Shemoka. He testified that a gunshot wound to Shemoka's shoulder was the cause of her death. The slug's entry point was located at the top of Shemoka's shoulder. The slug traveled top to bottom, and slightly front to back, before it exited through Shemoka's armpit. In addition to his observations regarding the slug path, Dr. Odom testified that there was stippling around the entry wound. Stippling consists of small abrasions on the skin that are caused by minute particles of dirt or gunpowder that strike the skin. Stippling aids medical examiners in determining how close a muzzle was to the skin when fired. No stippling occurs at all if the gun is more than three feet from the skin when fired.

■ Reviewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused the death of Shemoka. Appellant and Shemoka had been arguing all afternoon. Appellant's own brother testified that Appellant told Shemoka he was "tired of her shit." Immediately after the gunshot, Appellant was holding the weapon. The forensic evidence suggests that Shemoka was shot at close range and at an angle inconsistent with an accidental shooting. Because there is more than a mere modicum of evidence of Appellant's guilt, we

hold the evidence is legally sufficient to support the jury's verdict. We therefore overrule Appellant's first point of error.

■ Having determined the evidence was legally sufficient, this Court now reviews all of the evidence impartially to ascertain whether the verdict was clearly wrong or unjust. In addition to the statements of Albert Alex recounted above, Albert also gave a statement soon after the shooting. Albert originally told Investigator Wiggins that when he turned around immediately after hearing the shot, Appellant was not holding the weapon, but the weapon was laying on the ground. In a subsequent interview with Wiggins, Albert changed his story saying that Appellant was holding the gun. Albert also testified that he attended special education classes, that he has been tested by psychologists, that he is crazy, and that he receives federal disability payments of $850.00 per month.

Although Albert's testimony is possibly unreliable and inconsistent regarding the events of February 4, 1995, Albert's testimony is not the only evidence relating to Appellant's intent. Dr. Odom testified that the angle of the slug's path was top to bottom, and front to back. Both this angle and the stippling are inconsistent with Appellant's assertion that the gun went off when he accidentally dropped it.

In light of all of the evidence offered at trial, the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We therefore hold that the evidence is factually sufficient to support Appellant's conviction. We overrule Appellant's second point of error.

In his third point of error, Appellant contends the trial court erred in overruling his objection to the State's closing argument. Specifically, Appellant complains that the following exchange injected new facts into the trial:

PROSECUTOR: Why would you oil a gun and put it on the ground? I asked Albert. I said, "What was it put on?"

"The ground." Why would you oil a gun, you're getting it cleaned up, you're going to go where? Squirrel hunting? I've been coon hunting at night, I've been fox hunting at night, but I've never been squirrel hunting at night. Kind of hard to do. At least the way I squirrel hunt anyway. Kind of hard to do.

APPELLANT: Objection, Your Honor. That's not what the testimony was, about it being night.

COURT: Overruled.

APPELLANT: He's· misleading the jury, Your Honor.

COURT: The jury will be governed by the evidence.

We disagree with Appellant's contention.

 "[T]he object and principal purpose of argument to the jury is to aid and assist it in properly analyzing the evidence and to arrive at a just and reasonable conclusion based on the evidence alone." *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex.Cr. App.1984). Jury argument is measured by the following standard:

Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. In order to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence.

*McKay v. State*, 707 S.W.2d 23, 36 (Tex.Cr. App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986) (citations omitted). "Improper argument on the part of the prosecuting attorney occurs when in his or her argument to the jury the prosecuting attorney ... makes a manifestly improper, harmful or prejudicial argument, or the prosecuting attorney injects through his argument some new and harmful fact into the case." *Dickinson*, 685 S.W.2d at 322.

 The substance of Appellant's complaint is that the prosecutor improperly ar-

gued that it was dark when the shooting occurred and, therefore, Appellant would not have been preparing his shotgun to go squirrel hunting, but rather for the purpose of shooting Shemoka.

At trial, Albert, Appellant's brother, testified that it was late in the afternoon of February 4, 1995 when Shemoka and Appellant arrived at Appellant's grandmother's home. Appellant planned to go squirrel hunting with his uncle and had removed the shotgun from his trunk for that purpose. However, Albert also testified that it was still daylight. Appellant continued an argument, or fight, with Shemoka and subsequently shot her. Albert went into the house to call "911."

On February 4, 1995, Officer Ron Duncan was on patrol for the Rusk County Sheriff's Department. At about 5:55 p.m., Duncan received a call from the dispatcher for the Sheriff's Department, directing him to investigate the shooting of Shemoka.

The complained-of portion of the State's closing argument constituted a summation of the evidence and a reasonable deduction from the evidence. Appellant complains that the State's attorney improperly stated that the shooting occurred when it was dark. However, Appellant arrived at his grandmother's home late on a February afternoon. Appellant subsequently cleaned his gun and then shot Shemoka. Appellant's uncle had not yet arrived to go hunting. It is a reasonable deduction from the evidence adduced at trial that it would have been dark or near dark by the time Appellant would have gone squirrel hunting. The State's argument did not inject new or harmful facts into evidence. Neither was such argument so extreme or manifestly improper as to constitute reversible error. We therefore overrule Appellant's third point of error.

The judgment of the trial court is **affirmed.**