Opinion issued March 18, 2004 











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01326-CR
NO. 01-02-01327-CR




 JUAN CARLOS ULLOA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
 Harris County, Texas
Trial Court Cause Nos. 888569 & 888570












MEMORANDUM OPINION

          A jury convicted appellant, Juan Carlos Ulloa, of committing sexual assault of
a child younger than 17


 and aggravated sexual assault of a child younger than 14.


 
See Tex. Pen. Code Ann. §§ 22.011, 22.021 (Vernon Supp. 2004) (defining the two
offenses, respectively). After appellant pleaded true to an enhancement paragraph
alleging a prior conviction for sexual assault of a child in each indictment, the trial
court assessed appellant’s punishment at confinement for life in both causes. See
Tex. Pen. Code Ann. § 12.42(c)(2)(A)(i), (c)(2)(B)(ii) (Vernon 2003) (providing for
automatic life sentence for one convicted of a sex offense with a prior conviction for
a sex offense). 
          We determine (1) whether the evidence is factually sufficient to show that
appellant penetrated the sexual organ of a child younger than 14 with his sexual
organ, (2) whether the evidence is factually sufficient to show that appellant
penetrated the sexual organ of a child younger than 17 with his finger, and (3)
whether we need to address appellant’s contention that both convictions should be
reversed and the causes remanded to the trial court if the evidence supporting only
one of the convictions is factually insufficient. We affirm.
Facts
          Appellant hired V.T., a 13-year-old girl, to babysit appellant’s eight-year-old
and 12-year-old sons sometime prior to Mother’s Day, 2001. V.T.’s 15-year-old
sister, J.T., assisted in babysitting and was frequently with V.T. and the two boys
because J.T. was the 12-year-old son’s girlfriend.
          Appellant often spent time with J.T., V.T., and his two sons. He took them out
to eat and to the movies, and he also purchased gifts for V.T. During one trip to the
movies, appellant tried to open J.T.’s legs, but she stopped him by crossing them. On
a separate occasion outside the girls’ trailer home, appellant stuck his hand inside
J.T.’s low-cut, baggy jeans and inserted his finger into her vagina.
          During another trip to the movies, appellant unbuttoned V.T.’s pants and
“shoved his finger inside” her vagina for an estimated five minutes. V.T. had never
engaged in sexual activity prior to this incident. Subsequently, on Mother’s Day,
appellant helped deliver flowers to the girls’ mother at work. Upon returning to the
girls’ trailer, appellant called V.T. to his truck behind the open driver’s side door,
where he unbuttoned her pants and started “fingering” her. In another incident,
appellant pulled V.T.’s pants about halfway down and inserted his penis into her
vagina.
          On May 19, 2001, after the discovery of two “passion marks” or “hickies” on
V.T.’s neck, which appeared after V.T. had been talking with appellant outside, the
girls’ father became suspicious. The girls’ father asserted that the marks were not
present on V.T. before she went to speak with appellant and that he suspected that
appellant had made the marks. Later, while at a store, the girls’ father questioned J.T.
about V.T.’s marks, and J.T. responded that appellant had made the marks on V.T. 
Shortly thereafter, the girls’ family went to the home of appellant’s former mother-in-law, Yolanda Perez. There, in the presence of Mrs. Perez, the girls’ mother, their
father, and several others, V.T. initially denied appellant’s conduct; however, when
those present told her they already knew what appellant had done, V.T. admitted that
appellant had penetrated her with his finger and his penis.
          Appellant called the girls’ father on the same day and asked, “Do I need to get
a lawyer?” The girls’ father responded, “Maybe,” to which appellant responded, “I’m
going to get away with this.” The next day, a detective took sworn accounts from
both complainants, J.T. and V.T., and surveyed the girls’ home, near which the
assaults had occurred. Another detective, a juvenile sex crimes investigator,
interviewed each of the girls separately. In her interview, J.T. stated that appellant
had penetrated her once with his finger. V.T. initially denied that appellant had had
sexual intercourse with her, but she later affirmed that appellant had penetrated her
vagina once with his finger and once with his penis. Upon conclusion of the
interviews, the detective referred the girls to the Children’s Assessment Center (CAC)
for a physical examination.
          On July 20, 2001, a sexual abuse nurse examiner at the CAC conducted an
interview with, and performed a physical examination on, both girls. The purpose of
the interviews was to uncover medical history and to determine whether there had
been any kind of abuse. J.T. told the nurse that appellant had stuck his hand down
her pants and “fingered” her vagina. The nurse could not recall J.T.’s response to a
question about prior sexual history. The nurse’s examination of J.T.’s hymen
revealed a partially healed tear in her hymen that was consistent with penetration. 
          According to the nurse, V.T. was a bit more reserved and removed, but V.T.
disclosed that appellant had touched J.T. first and then had touched her “the whole
time” that she babysat appellant’s two sons. The nurse was unable to recall whether,
during the interview, she had asked V.T. about prior consensual sexual activity
without receiving a reply or whether she simply had not asked the question at all. In
addition, she did not ask V.T. whether she masturbated. During her physical
examination of V.T., the nurse determined that V.T. had a “notch” in her hymen
consistent with an object’s having penetrated her vagina, but the examination did not
permit the nurse to determine the source or rudimentary cause. The nurse was unable
to surmise a time-frame for the trauma, noting only that the trauma had been present
more than 24 to 48 hours prior to the examination. The nurse ultimately concluded
that the results of her examinations of each girl were consistent with J.T.’s and V.T.’s
respective disclosures of appellant’s conduct toward each of them. Standard of Review
          When determining the factual sufficiency of the evidence, we review all of the 
evidence neutrally. Johnson v. State, 23 S.W. 3d 1, 6-7 (Tex. Crim. App. 2000). In
a factual-sufficiency review, we consider evidence that both supports and controverts
the elemental fact in dispute. See Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997). The verdict must be affirmed unless (1) the evidence supporting
it is so obviously weak as to render the verdict clearly wrong and manifestly unjust
or (2) the verdict is against the great weight and preponderance of the available
evidence and, therefore, manifestly unjust. See Johnson, 23 S.W.3d at 10-11. 
However, the fact finder is the sole judge of the weight and credibility of witness
testimony. Id. at 7. A sexual assault victim’s uncorroborated testimony alone can
be sufficient to warrant a conviction. See Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon Supp. 2004); Sandoval v. State, 52 S.W.3d 851, 854 n.1 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). 
 
Factual Sufficiency
A.      V.T.
          In issue one, appellant contends that the evidence is factually insufficient to
show that he penetrated the sexual organ of V.T. with his penis. See Tex. Pen. Code
Ann. §§ 22.021(a)(1)(B)(i) & 22.021(a)(2)(B) (Vernon Supp. 2004). Appellant
asserts that the evidence showing that he penetrated V.T. is “so weak, inconsistent,
improbable and unbelievable that it is factually insufficient.” He contends that (1)
the inconsistencies in V.T.’s testimony give this Court cause to examine the jury’s
reliance upon that testimony alone as evidence for a guilty verdict and (2) the only
evidence at trial that appellant had penetrated V.T.’s vagina with his penis came from
V.T.
          Although appellant concedes that state law authorizes a conviction for sexual
assault of a minor to stand on the testimony of the victim alone, he asserts that that
testimony here is so equivocal as to be factually insufficient under the Johnson test. 
See Johnson, 23 S.W.3d at 9-12. Appellant first asserts that V.T. gave numerous
statements, both sworn and unsworn, that were contradictory in nature as to the nature
and extent of appellant’s contacts with her. He contends that these inconsistencies
call into question whether appellant penetrated V.T.’s vagina with his penis even
once.


 The State responds that it presented evidence that V.T. gave multiple
statements, both sworn and unsworn, to friends and family, to two detectives, and to
a nurse, all of which statements confirmed that, on at least one occasion, appellant
penetrated V.T.’s vagina with his penis. The nurse testified that, although V.T.
initially denied the sexual assault in her interview because she was scared, V.T. later
admitted that appellant had penetrated her with his penis on one occasion. This
description is consistent with V.T.’s prior discussion with a detective. In that
interview, V.T. also initially denied appellant’s conduct, but eventually admitted that
appellant had penetrated her vagina with his penis. 
          The jury as fact finder is the sole judge of the weight and credibility of witness
testimony. Johnson, 23 S.W.3d at 7. V.T.’s statements, whether consistent or
conflicting, were for the jury to assess. Id. It is well settled that, as the exclusive
judge of the facts, the credibility of the witnesses, and the weight to be given their
testimony, the jury may believe or disbelieve all or any part of a witness’s testimony. 
See Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). 
In each of her earlier statements, as well as at trial, V.T. described appellant’s conduct
to be penetration with his penis at least once. The jurors thus reasonably could have
concluded that V.T.’s inconsistency and initial hesitation in describing the number
of sexual penetrations in her trial testimony did not negate their ability to convict
appellant on any one instance of aggravated sexual assault that they chose to believe.
See id. We must not substitute our own judgment for that of the jury. See Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). 
          Appellant further contends that the evidence is factually insufficient because
his conviction was based solely upon the testimony of V.T., an inconsistent, single
witness with no corroborating evidence. Appellant urges this Court to adopt a bright-line rule that, if the conviction is based upon a witness’s equivocal testimony, the
evidence is per se factually insufficient to support a conviction for sexual assault,
unless other evidence corroborates a version of the witness’s testimony.
          Appellant relies upon two cases to show that the evidence to support his
conviction is factually insufficient. In Alex v. State, Albert Alex was the sole witness
to a murder committed by his brother, Algreen Alex, the appellant. See id., 930
S.W.2d 787, 790 (Tex. App.—Tyler 1996, no pet.). In upholding the conviction, the
court of appeals acknowledged that the eyewitness testimony was “possibly
unreliable and inconsistent” and pointed to corroborating evidence to support the
jury’s conclusion. See id. Alex, however, does not stand for the proposition that a
witness’s inconsistent testimony must always be corroborated by additional evidence.
          Appellant similarly relies upon McKinny v. State, 76 S.W.3d 463 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). However, in McKinny, this Court noted
that the weight to be given contradictory testimonial evidence is within the sole
province of the jury because an evaluation of credibility and demeanor is involved. 
Id. at 469. Both McKinny and Alex indicate that, when other supporting evidence is
available, questions of factual insufficiency due to testimonial inconsistencies can be
downplayed. See McKinny, 76 S.W.3d at 469; Alex, 930 S.W.2d at 790. Because
neither Alex nor McKinny supports appellant’s proposition that a single witness’s
equivocal testimony alone is always factually insufficient to support a conviction, we
decline to adopt such a bright-line rule. 
          Moreover, as in both Alex and McKinny, sufficient corroborating evidence
exists in this case to overcome appellant’s claims of factual insufficiency due to
testimonial inconsistencies on the part of V.T. There is evidence in this case, other
than V.T.’s testimony, that would have allowed the jury to make reasonable inferences
to support appellant’s conviction. First, the nurse testified at trial that the trauma to
V.T.’s hymen was consistent with the description of events given by V.T. Second, the
State presented numerous photographs of the passion marks, the damage to V.T.’s
hymen, and the layout of the trailer park showing appellant’s parking habits when he
visited V.T.’s home, all of which corroborated the testimony of V.T. and others. 
Third, J.T. reported to her father that appellant had left the marks on V.T.’s neck. 
Finally, the State presented the girls’ father’s testimony that he had had a discussion
with appellant in which appellant indicated that he would “get away with this.” 
           The jury determines the credibility of the witnesses and may “believe all, some,
or none of the testimony.” See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim.
App. 1991). Thus, the jury was free to believe all, some, or none of the State’s
evidence of appellant’s conduct and to discount any inconsistencies in the witnesses’
testimony. The evidence supporting appellant’s conviction as to V.T. is neither so
obviously weak as to be clearly wrong and manifestly unjust, nor against the great
weight and preponderance of the available evidence. Accordingly, we hold that the
evidence is factually sufficient to support appellant’s conviction for aggravated sexual
assault of a child.We overrule issue one. 
 
B.      J.T.
          In issue two, appellant argues that the evidence is factually insufficient to
support his conviction for penetrating J.T.’s vagina with his finger. Here, appellant
contends that (1) J.T.’s testimony is “so improbable as to be unbelievable” and (2) the
nurse’s testimony concerning J.T. and the abnormalities in her hymen supports only
the proposition that somebody or something on a prior date may have penetrated her
vagina.
          Appellant asserts that, although J.T. was more steadfast in her assertions that he
had “fingered” her, her inability to recall the length of the incident and the unlikely
circumstances surrounding the incident render J.T.’s testimony unbelievable. 
Appellant notes that (1) J.T. testified that appellant’s son and her cousin were standing
three inches away from her during the incident; (2) J.T. could have reached out and
touched either appellant’s son or J.T.’s cousin, but did not; (3) she had not tried to get
their attention, although she had tried to struggle; and (4) appellant’s son and J.T.’s
cousin had not noticed the assault. Relying upon Scott v. State, appellant asserts that
J.T.’s testimony alone is so uncertain, inconsistent, improbable, or unbelievable that
it is insufficient to discharge the State’s burden of proof. See id., 934 S.W.2d 396, 398
(Tex. App.—Dallas 1996, no pet.) (recognizing that, under the civil standard of review
for factual sufficiency, a verdict must be reversed if the evidence adduced in support
of a vital fact, considered alone, is so uncertain, inconsistent, improbable, or
unbelievable that the verdict cannot stand).
          Here, the jury was free to determine the credibility of J.T.’s testimony regarding
the evidence supporting appellant’s conviction and to consider other evidence
concerning the events on the day of the sexual assault. We note that, in addition to her
testimony that, on the day that appellant penetrated J.T.’s vagina with his finger, two
children were three inches away from her, J.T. also testified that those children were
too busy playing to notice appellant’s conduct. The State also presented a photograph
that revealed a healed transection within J.T.’s hymen. According to the nurse, the
damage to J.T.’s hymen was consistent with “penetrating vaginal trauma.” In addition,
the State presented the testimony of V.T., a nurse, and a detective to prove appellant’s
guilt. This evidence is not so weak as to be clearly wrong and manifestly unjust. See
Johnson, 23 S.W.3d at 11. Accordingly, we hold that the evidence is factually
sufficient to support appellant’s conviction for sexual assault of J.T.We overrule issue two.
C.      Validity of Convictions
          In his third issue, appellant contends that if the evidence is factually insufficient
to support one of the convictions, both convictions should be reversed and the causes
remanded back to the trial court. Because the evidence is not factually insufficient to
support either conviction, appellant’s third point of error is moot.
          We overrule issue three. 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Tim Taft
                                                             Justice
Panel consists of Justices Taft, Keyes, and Bland.
Do not publish. See Tex. R. App. P. 47.2(b).