NO.
12-03-00173-CR

 

                     IN THE COURT OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

WILBUR
RONALD LEE,                                '                 APPEAL
FROM THE THIRD

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                       '                 ANDERSON
COUNTY, TEXAS

                                                                                                                          
                                 

                                                      MEMORANDUM
OPINION

Wilbur
Ronald Lee (AAppellant@) appeals two convictions for indecency
with a child.  In his sole issue on
appeal, Appellant asserts that the evidence is not legally sufficient to
support his convictions.  We affirm.

 

Background








Appellant
was charged by indictment with two counts of indecency with a child.[1]  Appellant pleaded not guilty and elected a
trial by jury.  At trial, the alleged
victim, C.P., testified that, on April 5, 2000, she was sixteen years old
and at the Dairy Queen with her nine-year-old cousin.  When Appellant entered the Dairy Queen, C.P.
recognized him. Appellant approached C.P., hugged her, and kissed her on the
cheek.  Appellant told C.P.=s cousin that he was her Adaddy.@  According to C.P., Appellant sat down beside
her, and began touching her breast and between her legs.  The jury found Appellant guilty of two counts
of indecency with a child and assessed punishment at ten years of imprisonment
for count one, and two years of imprisonment for count two. [2]  Following a recommendation by the jury, the
trial court suspended imposition of Appellant=s
sentence on count one and placed him on probation for ten years.

 

Legal Sufficiency

In
his sole issue, Appellant argues that the evidence is legally insufficient to
support two convictions for indecency with a child.  More specifically, Appellant contends that
there was no evidence to prove that Appellant was not the spouse of C.P.  The State disagrees, and argues that there is
sufficient circumstantial evidence to establish that C.P. was not Appellant=s spouse.

Standard
of Review








ALegal sufficiency is the constitutional
minimum required by the Due Process Clause of the Fourteenth Amendment to
sustain a criminal conviction.@  Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.BSan
Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979)).  The standard of review is whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d
670, 671 (Tex. Crim. App. 2000).  The
evidence is viewed in the light most favorable to the verdict.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; LaCour, 8 S.W.3d at 671.  The conviction will be sustained Aunless it is found to be irrational or
unsupported by more than a >mere
modicum= of the
evidence.@  Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). Circumstantial evidence may be used to prove
an element of an offense. Meyers v. State, 737 S.W.2d 6, 8 (Tex.
App.BCorpus
Christi 1987, no pet.) (citing Wilson v. State, 654 S.W.2d 465,
467 (Tex. Crim. App. 1983)).  A
circumstantial evidence case has no different standard of review than those
cases supported by direct evidence.  Alex
v. State, 930 S.W.2d 787, 789 (Tex. App.BTyler
1996, no pet.) (citing Geesa v. State, 820 S.W.2d 154, 158 (Tex.
Crim. App. 1991)).  It is not necessary,
however, that every fact point directly and independently to the guilt of the
accused. Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App.
1987).  Further, the cumulative force of
all the incriminating circumstances may be sufficient to warrant a conclusion
of guilt.  Id.; Alex,
930 S.W.2d at 789.

The
jury is the sole judge of the credibility of witnesses and of the weight to be
given their testimony.  Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury=s domain.  Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986).  If a
reviewing court finds the evidence legally insufficient to support a
conviction, the result is an acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d
652 (1982).  In a criminal conviction,
sufficiency of the evidence is determined by the elements of the crime as
defined by the hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997).  The correct
charge Awould be
one that accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State=s
burden of proof or unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.@  Id.

Elements
of the Offense

A
person commits the offense of indecency with a child if, with a child younger
than seventeen years and not the person=s
spouse, whether the child is of the same or opposite sex,  the person engages in sexual contact with the
child.[3]
 Tex. Pen. Code Ann. ' 21.11(a)(1) (Vernon 2003). ASexual contact@
means any touching by a person of the anus, breast, or any part of the genitals
of a child if committed with the intent to arouse or gratify the sexual desire
of any person.[4]
Tex. Pen. Code Ann. ' 21.11(c)(1) (Vernon 2003).

Analysis








The
evidence shows that, in C.P.=s
statement, she referred to the man who touched her as ARoland
Ross.@ At
trial, C.P. testified that she knew Appellant through his daughter, Christian
Ross (ARoss@), a friend of hers.  C.P. testified that she Anever really called@ Appellant Aa
name,@ but Ajust talked to him.@ 
She went to Appellant=s
and Ross=s house Ajust about@
every day and, on occasion, spent the night at their house.  At trial, Tabitha Inge (AInge@)
testified that she was C.P.=s
guardian at the time of the occurrence. 
According to Inge, C.P. identified the person who touched her as a man
with a gold tooth whom Athey
call . . . Ronnie or something like that.@

At
trial, Officer Jack Hallock, III (AHallock@), a patrolman with the Palestine
Police Department, testified that, on April 5, 2000, he was dispatched to Inge=s residence.  According to Hallock, C.P. referred to the
man who touched her as a person she knew as ARoland.@ 
Later that same day, Hallock questioned Appellant.  Appellant declared that his daughter, Ross,
knew C.P.  At first, Appellant denied
seeing C.P. on that date.  However, after
affirming that he had been to the Dairy Queen that day, he acknowledged seeing
C.P. there.  Although Appellant initially
denied touching C.P. in any way, he admitted giving C.P. a hug Abecause she considers him as a father.@ 
At trial, Appellant stated that he did not know C.P.=s name because his daughter addressed
C.P. by a nickname.  Appellant did not
know who the officer was referring to and that was why he first denied seeing
C.P.  When his daughter pointed out that
C.P. was the girl who came to their house, he admitted seeing C.P. at the Dairy
Queen. 

Before
this incident, Appellant testified that his daughter, Ross, and C.P. were good
friends, and that C.P. was at his house almost every day.  However, Appellant denied a Aclose relationship@ with C.P.  On the weekends, Appellant testified that he
would stay overnight at his girlfriend=s
house.  At the time of the occurrence,
Appellant=s
girlfriend was Dawn Adair (AAdair@).  
In fact, he testified that they are still in a relationship and have
lived together for eight years.  Patricia
Adair (APatricia@), Adair=s
sixteen-year-old daughter, testified that Appellant has been her mother=s boyfriend for approximately eight
years, and that, beginning when she was in third grade, Patricia and her mother
had lived with Appellant.








Appellant
remembered telling one of the officers that he considered C.P. a daughter.  At the Dairy Queen, he testified that, when
he walked in, C.P. Ahollered@ and said, APop,
come here.@  C.P.=s
cousin asked her if Appellant was her father. 
Appellant testified that the Akids
call me pop.@ Further,
Appellant explained that he did not think the trial was silly because, he
stated, AI got
kids. I got girls.@  Officer Brian Taylor Wharton (AWharton@),
chief of detectives of the Palestine Police Department, interviewed and took a
statement from Appellant.  In the
statement, Appellant referred to C.P. as Aa
girl that I knew.@  During his testimony, Appellant referred to
C.P. as Athat
girl.@ 

A
review of the evidence in the light most favorable to the verdict reveals that
Appellant denied seeing C.P. until his daughter reminded him who she was,
admitted that he did not know C.P.=s
proper name, denied having a close relationship with C.P., and referred to C.P.
as Athat girl@
or a girl he knew.  Further, Appellant
considered C.P. as a daughter, informed C.P.=s
cousin that he was her father, acknowledged that C.P. and other children called
him Apop,@ and realized the seriousness of the
trial because he had daughters.  Moreover,
C.P. was unsure of Appellant=s
name, testified that she never addressed Appellant by his name, and admitted
that her only knowledge of Appellant was through Ross.  All of this evidence supports an inference
that C.P. was not Appellant=s
spouse, and that any relationship they had was more like a father-daughter
relationship. See Meyers, 737 S.W.2d at 8.  Appellant and Patricia both admitted that
Appellant and Adair had been in a relationship for approximately eight years
and had lived together during that time. 
C.P. asserted that she only spent the night at Appellant=s house on occasion.  This evidence shows that Appellant was involved
in another relationship at the time of the occurrence and that C.P. did not
regularly sleep at Appellant=s
house.  See id.  Finally, at the time of the occurrence, Inge
testified that she was C.P.=s
guardian.  If C.P. were Appellant=s spouse, Inge=s
guardianship would have  terminated.  See Tex.
Fam. Code Ann. '
1.104 (Vernon 1998) (declaring that a married person, regardless of age, has
the capacity and power of an adult); Thompson v. Crim, 132 Tex.
586, 590, 126 S.W.2d 18, 20 (1939) (clarifying that a guardianship is
terminated by marriage).  Evidence of a
guardianship also supports an inference that C.P. was not Appellant=s spouse at the time of the occurrence.

Based
on our review of the record and viewing the evidence in the light most
favorable to the jury=s
verdict, we conclude that there is sufficient circumstantial evidence to prove
that C.P. was not Appellant=s
spouse on April 5, 2000.  Therefore, a
rational trier of fact could have found the elements of indecency with a child
beyond a reasonable doubt.  Accordingly,
Appellant=s sole
issue is overruled. 

 

 








Conclusion

Based
upon our review of the record, we hold that the evidence is legally sufficient
to support the jury=s
verdict. Accordingly, the judgment of the trial court is affirmed.

 

 

 

  
 SAM GRIFFITH   

   Justice

 

 

Opinion
delivered April 30, 2004.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                             (DO
NOT PUBLISH)











[1]
Tex. Pen. Code Ann. ' 21.11(a)(1) (Vernon 2003).





[2]
An offense under section 21.11(a)(1) is a
second-degree felony.  Tex. Pen. Code Ann. ' 21.11(d). Punishment of a second-degree felony is
imprisonment for not more than twenty years or less than two years and, in
addition, a fine not to exceed $10,000. Tex.
Pen. Code Ann. ' 12.33 (Vernon 2003).





[3]
In 2001, the legislature amended this section
deleting the words Ahe@ and Ahis@ and substituting Athe
person.@ Tex. Pen. Code
Ann. ' 21.11(a) historical note (Vernon 2003) [Act of June
13, 2001, 77th Leg., R.S., ch. 739, ' 2, sec.
21.11(a), 2001 Tex. Gen. Laws 1463-64]. 





[4]
In 2001, the legislature added this subsection. Tex. Pen. Code Ann. ' 21.11(c) historical note (Vernon 2003) [Act of June
13, 2001, 77th Leg., R.S., ch. 739, ' 2, sec.
21.11(c), 2001 Tex. Gen. Laws 1463-64]. 
However, the definition of Asexual
contact@ in section 21.01(2) is basically the same as in
section 21.11(c)(1).  Compare Tex. Pen. Code Ann. ' 21.01(2) (Vernon 2003) with Tex. Pen. Code Ann. ' 21.11(c)(1).