NO. 12-03-00328-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
CHRISTOPHER PHILLIP BANKS,                  §               APPEAL FROM THE 
APPELLANT
 
V.                                                                          §               COUNTY COURT AT LAW

THE STATE OF TEXAS,
APPELLEE                                                          §               SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Christopher Banks (“Appellant”) appeals his conviction for driving while intoxicated. In two
issues on appeal, Appellant asserts that the evidence is not legally or factually sufficient to support his
conviction. We affirm.
 
Background
            Appellant was charged by information with the offense of driving while intoxicated in Smith
County, Texas.


 Appellant pleaded “not guilty” and elected a trial by jury. 
            At trial, three Texas Department of Public Safety troopers described the circumstances
surrounding Appellant’s arrest. Trooper Patrick Dark (“Dark”) testified that he and his partner,
Trooper Robert Johnson (“Johnson”), responded to a CB radio report that a truck and semi-trailer had
jackknifed on a service road beside Interstate 20 (“I-20") in Smith County, Texas. The service road
was a two-lane roadway. When they arrived at the scene, Dark observed that the truck was jackknifed
and rolled back to the right with the trailer turned and off the road, its back tires raised off the ground.
The truck covered approximately ninety percent of the traffic lane. He did not observe any marks
indicating that the truck was sliding down the shoulder of the road. Further, Dark stated that it had
not been raining heavily that night. 
            Dark observed Appellant sitting in the truck behind the wheel with the engine running and the
keys in the ignition. He did not check to see if the truck was in gear. Appellant informed Dark that
he had stopped to make a telephone call when the truck rolled back off the road.
            Johnson confirmed Dark’s description of the scene. He remembers Appellant stating that he
was not paying attention and that the vehicle rolled back. Dark and Johnson notified a license and
weight unit in the area to come to the scene. Trooper John Perdue (“Perdue”), a commercial motor
vehicle inspector in the license and weight service, responded to the call. 
            When Perdue arrived, he observed that the rear of the trailer was off the road, the first axle was
on the pavement, and axles two and three on the driver’s side were off the ground. He believes axles
four and five were on the ground, but off the roadway. Perdue does not remember seeing any skid
marks or gouges in the road. According to Perdue, it did not appear to have been raining. 
            When Perdue approached the truck, he noticed Appellant was sitting in the driver’s seat, behind
the wheel, with one arm on the steering wheel, talking on his cell telephone. The truck was not
running at that time. Perdue does not recall if the emergency brake was set and does not know if the
truck was in gear. The clutch was not depressed. When asked whether he has ever heard of a system
installed on trucks called “opti-idle” or “optimum-idle,” Perdue stated that he has not. Further, Perdue
did not notice whether Appellant’s truck was equipped with “opti-idle,” nor could he recall if the truck
was equipped with satellite antennae or a global positioning satellite system (“GPS”). 
            Perdue asked Appellant to step from the truck. As Appellant walked past him, Perdue smelled
a strong odor of alcoholic beverage coming from Appellant’s breath. Further, Perdue found an open
container of whiskey in the truck, a 1.75 liter bottle. Dark and Johnson had also smelled an alcoholic
beverage on Appellant’s breath.
            Perdue performed four field sobriety tests on Appellant. After the tests, Perdue formed an
opinion that Appellant was intoxicated and arrested him for driving while intoxicated. When
Appellant was taken to the jail, he provided two intoxilyzer test samples. After advising Appellant
of his Miranda


 rights, Perdue conducted a driving-while-intoxicated interview and asked Appellant
whether he was operating a vehicle. Appellant responded, “Yeah, no.” 
            Perdue asked Appellant what had happened. Perdue recalled that Appellant stated that “he was
backing, trying to get off the roadway, and trying to park it to the side of the road.” Perdue said it was
not possible that the truck rolled back on its own volition because the roadway was on a slight hill. 
In fact, the truck was pointing downhill. Perdue testified that it is more probable Appellant was trying
to park his truck to the side of the road.
            Rex Swords (“Swords”), the DPS technical supervisor, maintains, repairs, inspects, and
calibrates the instruments, and supervises the breath-test operators. He testified that Appellant’s
breath-alcohol concentration was, in the lower of the two intoxilyzer samples, 0.211 grams per 210
liters.  
            Leland Wayne Turner (“Turner”), a heavy wrecker, haul-truck, and recovery truck driver with
Campbell’s Towing & Recovery, towed the truck from the scene. When he first saw the vehicle,
Turner noticed that one side of the truck was off the pavement, and the ground beyond the shoulder
was wet and boggy. However, Turner did not actually walk around the vehicle. According to Turner,
the service road inclined back to the right, basically level, but with a downhill slope. Further, Turner
does not know what an “optimal-idle” or “opti-idle” is.
            Appellant also gave his version of the events. He testified that, at 6:00 p.m. on October 21,
2002, he pulled off the side of the roadway where the troopers later found him. He set the truck on
“optimize-idle,” a system that turns the truck on and off to maintain truck cab and oil temperatures,
keeps the battery charged, and regulates temperature in the sleeper berth. The key must be in the
ignition, but not in gear as the “opti-idle” will not engage unless the vehicle is in neutral. Once in
“opti-idle,” the truck is inoperable unless he disengages the system. Further, Appellant states that his
truck was equipped with a GPS system that tracks his location and speed. After Appellant set the
“opti-idle” that night, he updated his log book. 
            Appellant acknowledged that he was intoxicated at the time the troopers arrived. However,
Appellant testified that he did not, at any time, drive while intoxicated or operate a motor vehicle while
intoxicated.
            Appellant stated that after he parked the truck, the trailer slid down the embankment and he
became scared. He determined that it was too dark and decided not to do anything about the situation
that night. In fact, he decided to rescue the truck in the morning because he was tired, and it was late
and wet. Further, he had already had a drink. Appellant did call his wife and tell her what had
occurred.  
            Appellant is not sure of the exact time when his truck slid, but it was quite some time before
the troopers arrived. Appellant’s explanation of replying “yeah, no” to Perdue when asked if he was
operating a vehicle meant that, “yes,” he was operating earlier that day, but, “no,” not when the
troopers arrived. Appellant believes he told the trooper that the truck slid or rolled back, but does not
remember the exact conversation. Appellant does not believe the truck was far out in the roadway. 
To him, it appeared that the three and four axles were just barely up to the white line or that it was “a
little bit in the road.” 
            On July 10, 2003, the jury found Appellant guilty of driving while intoxicated. The judge
assessed punishment at 180 days in jail, probated for a period of 15 months, and a fine of $1,000, with
$500 of the fine probated.


 This appeal followed.
 
Evidentiary Sufficiency
            In his first and second issues, Appellant argues that the evidence is legally and factually
insufficient to support his conviction as alleged in the information. More specifically, Appellant
contends that he was not exerting personal control over (operating or driving) the vehicle for its
intended purposes while intoxicated. The State disagrees and contends that there was sufficient
evidence that Appellant was operating his vehicle.
Standard of Review
            “Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction.” Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence is
viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; LaCour
v. State, 8 S.W.3d at 671. The conviction will be sustained “unless it is found to be irrational or
unsupported by more than a ‘mere modicum’ of the evidence.” Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). Circumstantial evidence may be used to prove an element of an offense. 
Meyers v. State, 737 S.W.2d 6, 8 (Tex. App.–Corpus Christi 1987, no pet.) (citing Wilson v. State,
654 S.W.2d 465, 467 (Tex. Crim. App. 1983)). A circumstantial evidence case has no different
standard of review than those cases supported by direct evidence. Alex, 930 S.W.2d 787, 789 (Tex.
App.–Tyler 1996, no pet.) (citing Geesa v. State, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991)). It
is not necessary, however, that every fact point directly and independently to the guilt of the accused. 
Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Further, the cumulative force of
all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. Id.; Alex v.
State, 930 S.W.2d at 789.
            The jury is the sole judge of the credibility of witnesses and of the weight to be given their
testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of
conflicts and contradictions in the evidence is entirely within the jury’s domain. Losada v. State, 721
S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court finds the evidence legally insufficient
to support a conviction, the result is an acquittal. Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct.
2211, 2217-18, 72 L. Ed. 2d 652 (1982). 
            After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing the factual sufficiency of the evidence, a court
examines all the evidence “without the prism of ‘in the light most favorable to the prosecution’ and
sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.” Id. at 134. The court must inquire whether a neutral review of all the
evidence, both for and against the verdict, establishes that the proof of guilt is so manifestly weak as
to undermine faith in the jury’s resolution, or the proof of guilt, although sufficient if taken alone, is
greatly offset by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
            A proper deference should be demonstrated by the reviewing court in order to deter a court
from substituting its judgment for that of the fact finder, and any examination of the evidence should
not substantially infringe upon the fact finder’s role as the exclusive judge of the weight and credibility
given to witness testimony. Id.; Clewis, 922 S.W.2d at 133. Wrong and unjust verdicts include ones
in which the verdict is “manifestly unjust,” “shocks the conscience,” or “clearly demonstrates bias.” 
Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The reviewing court examines all
of the evidence in the record pertaining to the factual sufficiency challenge, not just evidence
confirming the verdict. Id. at 164. The jury’s determination on any conflicting evidence is usually
decisive. Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).
            In a criminal conviction, sufficiency of the evidence is determined by the elements of the crime
as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). The correct charge “would be one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the
State’s theories of liability, and adequately describes the particular offense for which the defendant was
tried.” Id.
Elements of the Offense
            A person commits an offense if he is intoxicated while operating a motor vehicle in a public
place. Tex. Pen. Code Ann. § 49.04(a). The corpus delicti of driving while intoxicated is that
someone drove or operated a motor vehicle in a public place while intoxicated. Zavala v. State, 89
S.W.3d 134, 137 (Tex. App.–Corpus Christi 2002, no pet.). Although the term “operate” is not
defined by the penal code, the court of criminal appeals approved of the standard used by the Dallas
Court of Appeals. Denton v. State, 911 S.W.2d 388, 389-90 (Tex. Crim. App. 1995). In Barton v.
State, 882 S.W.2d 456 (Tex. App.–Dallas 1994, no pet.), the court concluded that, in order to find the
defendant operated his vehicle, a reviewing court must “examine the totality of the circumstances to
determine if [a defendant] exerted personal effort upon his vehicle in a manner that shows intentional
use of the vehicle for its intended purpose.” Barton, 882 S.W.2d at 459; see also Denton, 911 S.W.2d
at 389. In other words, a defendant operates a motor vehicle if he took action to affect the functioning
of his vehicle in a manner that would enable the vehicle’s use. Barton, 882 S.W.2d at 459; see also
Denton, 911 S.W.2d at 389. Further, while driving does involve operation, operation does not
necessarily involve driving. Denton, 911 S.W.2d at 389.
Analysis
            Appellant’s truck jackknifed on the service road of I-20 in Smith County, Texas. Perdue and
Turner testified that this roadway sloped downhill. Perdue testified it is probable that Appellant was
trying to park his truck on the side of the road. Moreover, Dark and Perdue stated that the truck
covered a significant part of the roadway. The police videotape of the scene is consistent with the
troopers’ testimony about the position of the truck. From their review of the videotape, the jury could
have agreed with Perdue that the vehicle did not slide back on its own volition. Appellant admitted
that he was intoxicated at the time the troopers arrived. When the troopers arrived, Appellant was
behind the wheel of his vehicle, the engine was running, and the keys were in the ignition. From this
evidence, a jury could have found sufficient evidence that Appellant was operating his vehicle while
intoxicated. See Hearne v. State, 80 S.W.3d 677, 679-80 (Tex. App.–Houston [1st Dist.] 2002, no
pet.) (facts that, when found by police officer, defendant was parked in a moving lane of traffic, alone
and sleeping with his head, resting on one hand, leaning against the driver’s side window, not
touching the brake or accelerator, but with the engine running and gearshift in “park,” and the truck
was registered to defendant and no other person nearby, found sufficient evidence of driving while
intoxicated); Garver v. State, No. 05-01-01032-CR, 2002 WL 1133019 at *1-3 (Tex. App.–Dallas
May 31, 2002, pet. dism’d, untimely filed) (not designed for publication) (facts that vehicle was
stopped in a parking lot with its engine running and lights on, that the vehicle had sustained heavy
body damage that appeared recent, that defendant was in the driver’s seat, and that defendant’s
location was not on her claimed route of travel, found sufficient evidence of driving while
intoxicated); Pope v. State, 802 S.W.2d 418, 419-420 (Tex. App.–Austin 1991, no pet.) (facts that
defendant’s vehicle was found sitting in the roadway with its engine running, its lights on, and the
driver’s door open, that defendant was found slumped behind the steering wheel, asleep, that an open
can of beer sat beside him, that appellant was alone, and that no one was in or near the vehicle, found
sufficient evidence of driving while intoxicated). 
            Moreover, in answering Perdue’s question whether he was operating a vehicle, Appellant
responded, “Yeah, no.” The jury could have chosen to disbelieve Appellant’s testimony about the
meaning of his response. Further, Perdue testified that Appellant stated he was backing his vehicle,
attempting to get off the roadway and park it on the side of the road. From this testimony, a jury could
have concluded beyond a reasonable doubt that Appellant was operating the vehicle at the time of the
incident. Therefore, the evidence is legally sufficient to support Appellant’s conviction. Accordingly,
Appellant’s first issue is overruled. 
            In reviewing the evidence to determine its factual sufficiency, we note that none of the troopers
witnessed the incident or knew when Appellant began drinking. Perdue admitted that he did not know
how long Appellant had been sitting in his vehicle. Although Dark and Johnson stated that the engine
was running when they arrived, Dark admitted that he did not check to see if the truck was in gear. 
Further, Perdue does not recall if the emergency brake was set or if the truck was in gear, although
he testified that the clutch was not depressed. Appellant testified that he did not drink until he had
stopped for the day, and that the truck slid or rolled back. In fact, he testified that the truck was
inoperable after he stopped and engaged the “opti-idle” system. 
            However, in reviewing the entire record, both for and against the jury’s verdict, we do not find
that proof of Appellant’s guilt is so manifestly weak as to undermine faith in the jury’s resolution, or
that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting proof. 
Accordingly, Appellant’s second issue is overruled.
 
Conclusion
            Based upon our review of the record, we conclude the evidence is both legally and factually
sufficient to support the jury’s verdict that Appellant was guilty of driving while intoxicated.
Accordingly, the judgment of the trial court is affirmed.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered June 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
(DO NOT PUBLISH)